UNITED STATES of America,
Plaintiff-Appellee,

v.

Willie BEARD, Noel Roberts,
Defendants-Appellants.

No. 85–8440
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Nov. 15, 1985.

Suzanne Hashimi, Federal Defender Program Inc., Atlanta, Ga., for Beard.

Stephen Delaney, Atlanta, Ga. (court-appointed), for Roberts.

William L. McKinnon, Jr., Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before FAY, JOHNSON and CLARK, Circuit Judges.

JOHNSON, Circuit Judge:

The appellants, Willie Beard and Noel Roberts, were charged in a one-count indictment with the armed bank robbery of the Georgia Baptist Branch of the National Bank of Georgia on January 4, 1985, in violation of 18 U.S.C.A. §§ 2113(a) and (d) and § 2. Jury verdicts of guilty were returned against both Beard and Roberts and each appeals from the judgments pronounced thereon.

The issues presented by these appeals are: (1) whether the evidence was sufficient to sustain defendant Roberts' conviction; (2) whether the in-court and pretrial identifications of defendant Beard were tainted by a suggestive pretrial lineup procedure; (3) whether the admission of testimony by a Deputy United States Marshal violated the sequestration rule; (4) whether the district court's charge on flight was supported by the evidence; (5) whether the arrest of the defendants was lawful; (6) whether there was a *Bruton* violation[1] and, if so, was it harmful to defendant Roberts; and (7) whether evidence on defendant Beard's failure to identify himself at arrest was prejudicially harmful in view of curative instructions by the trial judge.

The evidence when viewed as required by *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), reflected that in the early afternoon of January 4, 1985, a black male wearing a dark blue suit and dress hat entered the National Bank of Georgia at 340 Boulevard, Atlanta, Georgia, and robbed the teller of approximately $9,414. A teller of the bank, Shirley Abell, testified that on the date of the offense she looked up from her teller window and saw a man holding a gun on her. He handed her a bag and told her to put money in it. She filled the bag with $9,414 in one's, brand new five's, and one hundred dollar bills. The robber grabbed the bag and walked out of the bank. A witness outside the bank observed the gunman enter a car driven by a second individual. As the automobile drove away from the bank, the witness observed the license tag of the car. Based upon that piece of evidence, Federal Bureau of Investigation agents developed the defendants as suspects. At approximately 4:30 p.m., F.B.I. Special Agent Smith arrested the defendants after an automobile chase of about four miles. At the time they were arrested, both defendants had in their possession brand new five dollar bills, which were proceeds of the robbery. Shortly after their arrest, each defendant made an incriminating statement.

Ms. Abell positively identified defendant Beard as the gunman who robbed her. The evidence reflected that prior to trial Ms. Abell had been shown a photographic lineup on two occasions. At the first viewing, she narrowed her choice to two photographs, one of defendant Beard and the other of an individual unrelated to the case. During this interview and at this point an F.B.I. agent advised her "she was close." At the second viewing of photographs, which were displayed to her about a week

---

1. *Bruton v. United States*, 391 U.S. 123, 131, 88 S.Ct. 1620, 1625, 20 L.Ed.2d 476 (1968).

prior to trial, Ms. Abell positively identified Beard's photograph as that of the robber. Ms. Abell testified that her in-court identification of Beard was based on her observations of defendant Beard at the time of the robbery and was not based upon the pre-trial photographic lineup displays that were shown her.

Another employee, Kay Jones, was at a teller window directly beside Ms. Abell's and observed the bank robbery occur. At trial Ms. Jones identified defendant Beard as the robber. She also testified that defendant Beard had grown a beard since the robbery. A witness by the name of Cecelia Stanley was at the bus stop outside the bank when she observed a black male dressed in a blue suit walk past her and get into a car that was waiting at the street. Ms. Stanley testified that her attention was attracted to the black male because she observed the butt of a handgun sticking out of his hand. Ms. Stanley memorized the tag number of the car and gave the tag number to bank employees who provided the number to the police officers that had responded to the report of the robbery. The owner of the getaway car was Sandra Floyd. She was interviewed at her place of employment shortly after the robbery occurred. The evidence reflected that on the date of the robbery Sandra Floyd was living with her cousin, Bernita Livingston, and her cousin's fiance, defendant/appellant Noel Roberts, at 3621 Snapfinger Woods Drive in Atlanta. On the day of the robbery Ms. Floyd was driven to work and dropped off by Ms. Livingston because Ms. Livingston's car, a Chrysler Cordoba, was in poor running condition. On the date of the robbery Ms. Livingston and defendant Roberts had authority to drive Ms. Floyd's car and both had keys to the car. Within two hours after the robbery, F.B.I. agents located Ms. Floyd's car, the getaway car, outside Ms. Livingston's East Hampton apartment address. A search of Ms. Livingston's apartment led to the seizure of a blue suit matching the description of the one worn by the bank robber. Three or four of the witnesses testified that the suit appeared to be the same suit worn by the robber. F.B.I. Special Agent Michael Smith, along with other agents, went to the Snapfinger Woods Drive apartment to interview Ms. Livingston. Agent Smith remained outside the apartment and, as he sat in his car in the parking area, he observed two black males matching the descriptions of the defendants turn into the parking area in a Chrysler Cordoba. When the defendants observed Agent Smith in his unmarked car, they began to back out of the parking lot and drove out of the apartment complex, running a stop sign. Without trying to stop them, Agent Smith followed them. The Cordoba with the two black males ran two additional stop signs without making any effort to slow or stop. They drove at speeds of 55 to 60 miles per hour; the defendants passed three cars while going up a hill in a no-passing zone. After being followed by Agent Smith for almost four miles and not being able to elude him, the defendants voluntarily pulled their car over to the side of the roadway. Agent Smith held them at gunpoint for about five minutes until other officers arrived. The defendants were positively identified as suspects of the armed robbery and then placed under formal arrest.

A search of the defendant Roberts produced eleven new five-dollar bills and a receipt for clothing purchased that day. A search of the defendant Beard produced $785, which included $260 in new five-dollar bills and a receipt for clothing also purchased that day. A comparison of the serial numbers on the new five-dollar bills seized from the defendants revealed that the bills were divided between the two defendants in alternating serial numbers. These five-dollar bills were traced by the evidence to the Georgia Baptist Branch of the National Bank of Georgia and were identified as proceeds from the robbery. The manager of the clothing store that had issued the receipts for the purchases identified the defendants as being two individuals who came to his store during the afternoon of January 4, 1985, and made several large purchases of clothing. Defendant Roberts purchased $500 worth of new clothes and defendant Beard bought over

$300 worth of shirts and pants. Each defendant paid for the clothing in cash. The defendants were wearing some of the clothing when they were arrested.

At the scene of the arrest, the defendants were advised that they were being charged with bank robbery and were read their *Miranda* warnings after which both stated they understood their rights. The defendants were placed in separate vehicles for the drive to the F.B.I. office in downtown Atlanta. The route took the defendant Roberts and two F.B.I. agents past the apartments where the getaway car had been located earlier that afternoon. As Roberts was being driven past those apartments, he spontaneously asked, "Who got the car out of there?" As Agent Jones drove defendant Beard to the F.B.I. office, defendant Beard asked him, "How did you get on a fellow so quick? You must have gotten a license plate number." Agent Jones responded that they had gotten the tag number and asked defendant Beard why he had robbed the bank. Defendant Beard responded that he could not get a job.

 The record in this case reflects that the evidence to support the jury's verdict of guilty as to the defendant Roberts was clearly and amply substantial. Even had the defendant Roberts preserved the issue of the sufficiency of evidence for appeal by renewing his motion for judgment of acquittal at the close of all of the evidence, the evidence was sufficient to convince any reasonable trier of fact that the defendant was guilty beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). The admission of Ms. Abell's in-court and pretrial identification of the defendant Beard was not error. At trial Ms. Abell positively identified Beard in the courtroom as the perpetrator of the bank robbery. The lineup procedure that was followed in connection with Ms. Abell's identification was not unduly suggestive and her in-court identification of Beard was not tainted by the pretrial lineup procedure. The procedure followed, as far as the identification by Ms.

Abell is concerned, did not create any substantial risk of misidentification. *United States v. Gidley*, 527 F.2d 1345 (5th Cir. 1976). Any comment made by F.B.I. Agent Jones during the course of the pretrial identification procedures, if error, was harmless beyond a reasonable doubt. *United States v. Cueto*, 611 F.2d 1056 (5th Cir.1980).

 The admission of the testimony of Deputy United States Marshal Ray Navarro did not violate the rule of sequestration. Both appellants contend as error the admission of Deputy Marshal Navarro's testimony concerning the fact that the defendants switched shirts during the lunch break on the first day of trial. On appeal they contend that the deputy marshal's presence in the courtroom throughout the trial as a court security officer constituted a violation of the rule of sequestration. No such issue was raised before the trial court. However, both defendants through their attorneys did object to the admission of this testimony but only on the grounds that it was not probative of either's guilt. The defendants may not raise for the first time on appeal the issue that there is a technical violation of the rule of sequestration as a basis for reversal. Fed.R.Crim.P. 51; *United States v. Astling*, 733 F.2d 1446 (11th Cir.1984). Therefore, under the circumstances the defendants must demonstrate that the admission of Deputy Marshal Navarro's testimony was plain error affecting substantial rights. *United States v. Bey*, 667 F.2d 7 (5th Cir. Unit B 1982). The record reflects that Deputy Marshal Navarro was present in the courtroom to guard the defendants who were in the custody of the marshals and generally to maintain courtroom security. At the time the rule of sequestration was invoked on the first morning of trial, the act of which Deputy Marshal Navarro testified had not occurred. Therefore, the fact that he would be called as a witness could not have been anticipated. Further, the record reflects that evidence that the defendants had in fact switched shirts was not contested by the defendants. Mr. Navarro's testimony was certainly relevant to show defendant Beard's continuing effort to con-

fuse in-court identification of him by the eye witnesses. And it further was probative as to the relationship between the two defendants who were then being jointly tried. Clearly the admission of Mr. Navarro's testimony was not plain error.

Both defendants argue on appeal that the evidence did not support the charge given on the inference of guilt that could be drawn from the flight of the defendants immediately prior to their arrest. The defendants rely on *United States v. Myers*, 550 F.2d 1036 (5th Cir.1977), to support their argument that defendants' conduct after they were signed by the F.B.I. and immediately prior to their arrest was not sufficient to raise an inference of consciousness of guilt. There is no question that evidence of flight can raise a permissive inference of consciousness of guilt of the crime charged. *United States v. Borders*, 693 F.2d 1318 (11th Cir.1982). Further, the evidence authorized the district court to admit the evidence of defendants' flight and to charge the jury on the inference of guilt that they might draw from that flight. The four-step test set up by *Myers* does not sustain the contentions defendants make otherwise.

The argument raised by both defendants on this appeal that their warrantless arrest was unlawful is frivolous. As to the alleged *Bruton* violation raised by the appellant Roberts, Roberts must in order to succeed as to this issue show that the out-of-court statement by his co-defendant Beard directly implicated him and that the statement standing alone was clearly inculpatory. *United States v. Satterfield*, 743 F.2d 827 (11th Cir.1984). Defendant's question to the F.B.I. agent did not directly name the defendant Roberts, nor does it necessarily implicate Roberts in the commission of the bank robbery. As a matter of fact, the statement makes no mention of the commission of a bank robbery. Consequently, no *Bruton* violation occurred as a result of the introduction of the statement. Furthermore, any possibility that error was committed by the admission of the question was cured immediately by the trial judge with appropriate curative instructions to the jury.

Finally, as to the defendant Beard's contention that the government improperly elicited testimony that violated the defendant's post-arrest right to remain silent, the record reflects that, when F.B.I. Agent Smith asked both defendants for their names after he stopped them, neither would respond. When this question was asked and defendant Beard's counsel objected, the district court gave appropriate limiting instructions to the jury regarding the defendants' right to remain silent:

> The Court: Members of the jury, I do wish to inform you and charge you that anyone accused of a crime or stopped has the right to remain silent and is not required to respond as to any questions of any kind, and you should not draw any inference from the failure of a suspect or of a citizen or anyone who does not respond to any question of any kind.

We hold the above instruction rendered any error arising out of the government's eliciting the testimony as to Beard's silence harmless beyond a reasonable doubt. *Chapman v. California*, 388 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The conviction and judgment pronounced thereon as to each of the defendants is AFFIRMED.