Rodney Connolly was convicted of the capital offense of murder during the course of a robbery. This court reversed that conviction because of the trial court's failure to charge on the lesser included offense of murder. Connolly v. State,500 So.2d 57 (Ala.Cr.App. 1985), affirmed, 500 So.2d 68 (Ala. 1986). On retrial, Connolly was convicted of murder and sentenced to life imprisonment. He raises four issues on this appeal from that conviction.
 I
The appellant argues that the trial court erred in refusing to give the following written requested charge:
 "I charge you, members of the jury, that if the evidence convinces you that Stacey Bruner Trauathan is a woman of bad character, and unworthy of belief, then you may disregard her evidence altogether."
The refusal of a virtually identical charge was found to constitute reversible error in Ashlock v. State, 367 So.2d 560
(Ala.Cr.App. 1978), cert. denied, 367 So.2d 562 (Ala. 1979). However, here the court's failure to give the charge was not properly preserved for our review.
"No party may assign as error the court's . . . failing to give a written instruction . . . unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection." Rule 14, Temp. A.R.Cr.P. (emphasis added). Here, defense counsel made the following objection, "We'd except, of course, to you not giving all of our written charges as being correct statements of the law, the ones you did not give." Counsel "failed to set forth the *Page 438 
specific grounds for his objection." Ex parte Johnson,433 So.2d 479, 480 (Ala. 1983). See Matkins v. State,497 So.2d 201, 202 (Ala. 1986). The reference to "all of" his written charges as "correct statements of the law" is simply not a specific ground of objection, especially in view of the fact that defense counsel submitted 33 charges, 18 of which were refused. While defense counsel is not required "to deliver a discourse before the trial judge on the applicable law of the case," Gardner v. Dorsey, 331 So.2d 634, 637 (Ala. 1976) (construing Rule 51, A.R.Civ.P.), he is required to direct the court's attention to the reason why a particular requested charge, which is at a minimum a "correct statement of the law," applies in the particular case. "[E]rrors by the trial court such as . . . refusals of written charges . . . should be brought to the attention of the trial court so that it might cure such errors at that level." Allen v. State, 414 So.2d 989,992 (Ala.Cr.App. 1981), affirmed, Ex parte Allen,414 So.2d 993 (Ala. 1982).
 II
The defendant claims that the District Attorney assumed the dual roles of witness and prosecutor in violation of the principles set out in Waldrop v. State, 424 So.2d 1345
(Ala.Cr.App. 1982). See also Ex parte Gilchrist, 466 So.2d 991
(Ala. 1985); Maund v. State, 254 Ala. 452, 48 So.2d 553 (1950);Tarver v. State, 492 So.2d 328 (Ala.Cr.App. 1986); Stringer v.State, 372 So.2d 378 (Ala.Cr.App.), cert. denied, Ex parteStringer, 372 So.2d 384 (Ala. 1979).
During the investigation of the homicide, District Attorney Chris Galanos and Lieutenant Wilbur Williams went to Texas to take a statement from the defendant. At trial, the statement was introduced through the testimony of Lieutenant Williams, who stated that the District Attorney had read the defendant his Miranda rights. A tape recording of the interview, with the voices identified as those of Galanos, Williams, and the defendant was then played for the jury. The defendant argues that the tape recording constituted the "testimony" of Galanos, who, after becoming a "witness," should have been required to withdraw from the prosecution of the case.
The tape recording illustrated the testimony of Lieutenant Williams, see Molina v. State, 533 So.2d 701 (Ala.Cr.App. 1988), and did not constitute the "testimony" of Galanos. "Alltestimony, except as otherwise directed, must be given in open court on the oath or affirmation of the witness." Ala. Code 1975, § 12-21-135 (emphasis added). See also Black's LawDictionary 1778 (rev. 4th ed. 1968) (A witness is "[a] person whose declaration under oath (or affirmation) is received as evidence for any purpose, whether such declaration be made on oral examination or by deposition or affidavit.").
 "The term 'witness,' in its strict legal sense, means one who gives evidence in a cause before a court; and in its general sense includes all persons from whose lips testimony is extracted to be used in any judicial proceeding, and so includes deponents and affiants as well as persons delivering oral testimony before a court or jury." 97 C.J.S. Witnesses § 1 at 350 (1957).
Because the District Attorney neither took the stand and testified under oath or affirmation nor provided sworn testimony through a deposition or affidavit, he was not a "witness," and he was not required to withdraw from the prosecution of the case.
 III
The defendant insists that the trial court should have granted his motion for mistrial following testimony that he invoked his right to remain silent after Miranda warnings. On cross-examination of Lieutenant Williams by defense counsel, the following occurred:
 "Q [By Defense Counsel]: Well, sir, . . . that was the sum and substance of your investigation of the murder of Kathy Sands, basically, was it not, the statements, Herriman's statement from Connolly and several statements from Stacy Bruner?
 "A [By Lieutenant Williams]: Oh, no, sir. We had interviewed 45 or 50 people prior to the time that I went to Texas. *Page 439 
 We worked from two o'clock Friday evening until 11:30 Saturday night without stopping. And I had interviewed almost 50 people. But at that time when I returned from Texas, that culminated all contact with Mr. Connolly and Mr. Herriman because the lawyers wouldn't let them talk to us any more."
Defense counsel objected and moved for a mistrial. The trial court sustained the objection, denied the motion for mistrial, and gave the jury the following instruction:
 "Ladies and gentlemen, you will disregard the witness' last answer. A defendant in any criminal proceeding or a person from whom a statement is sought or being taken has a right to terminate that statement giving at any time and remain silent. And that is his right.
". . .
 "Let me go further on that instruction. Further, ladies and gentlemen, no improper motive can be given that invocation of the right by you."
In Houston v. State, 354 So.2d 825 (Ala.Cr.App. 1977), cert. denied, 354 So.2d 829 (Ala. 1978), the following observation was made:
 "The principle forbidding the prosecution to use evidence of defendant's post-arrest, post-Miranda warning silence for substantive purposes or as evidence of defendant's guilt is soundly established and based on fundamental principles of our jurisprudence. In Miranda v. Arizona, 384 U.S. 436, 468, n. 37, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966) the Supreme Court of the United States announced in dictum that
 " 'it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.' " 354 So.2d at 827.
"[A] comment on or evidence of the post arrest silence of the defendant or his refusal to give a statement may . . . be cured by prompt corrective action by the trial judge. This is not 'a bell once rung which cannot be unrung'. . . ." Hurt v.State, 361 So.2d 1163, 1165 (Ala.Cr.App. 1978). See alsoWilliams v. State, 445 So.2d 798, 806 (Miss. 1984), cert. denied, Williams v. Mississippi, 469 U.S. 1117, 105 S.Ct. 803,83 L.Ed.2d 795 (1985).
In order to determine whether the comment warrants a mistrial or is capable of being cured, a court should " 'look to the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact upon the jury.' " United States v.Vera, 701 F.2d 1349, 1362 (11th Cir. 1983).
Here, it is significant that the comment (1) was not elicited on questioning by the State, cf. United States v.Vera, supra (defense counsel inquired whether, during officer's investigation, defendant had ever "discussed anything criminal" regarding methaqualone negotiations), (2) was unresponsive and "volunteered" by the witness, cf. Matire v. Wainwright,811 F.2d 1430, 1435 (11th Cir. 1987) (comment "volunteered" by officer could not have been "manifestly intended" by prosecutor's question), and (3) was made in the context of an otherwise legitimate narration of the scope of the officer's investigation. Cf. Dudley v. State, 480 N.E.2d 881, 900 (Ind. 1985) (In answer to the question, "Did you have occasion to interview any other suspects in this case?" officer stated that accused "refused to be interviewed."). Furthermore, there was no misconduct by the prosecutor through repeated references to the defendant's silence, e.g. Matire v. Wainwright, supra, or use of that silence in argument, e.g., Houston v. State, supra. See generally, Commonwealth v. Gbur, 327 Pa. Super. 18,474 A.2d 1151 (1984).
When a trial court immediately instructs the jury to disregard improper remarks, it is presumed that the prejudicial effect of the impropriety is removed, Leverett v.State, 462 So.2d 972, 978 (Ala.Cr.App. 1984). The cautionary instruction given here was very similar to that given in UnitedStates v. Beard, 775 F.2d 1577 (11th Cir.), cert. denied,475 U.S. 1030, 106 S.Ct. 1235, 89 L.Ed.2d 343 (1986) wherein the Court held that the instruction "rendered any error *Page 440 
arising out of the government's eliciting the testimony as to Beard's silence harmless beyond a reasonable doubt.Chapman v. California, 388 [386] U.S. 18, 87 S.Ct. 824,17 L.Ed.2d 705 (1967)." Beard, 775 F.2d at 1581.
What we observed in Hurt v. State, 361 So.2d at 1165, is equally applicable here:
 "In this case there was no abuse of discretion. The actions of the trial judge were immediate, responsive, conscientious, and deserving of emulation. This matter was not so prejudicial that it could not be erased from the mind of the jury. Therefore the denial of the motion for mistrial was without error."
 IV
The defendant argues that his prosecution for the capital offense involving the murder and robbery of Ms. Sands violated principles of former jeopardy and was barred by his prior conviction for the theft of Ms. Sands's automobile. We agree.
In reviewing the defendant's first conviction for the capital offense, our Supreme Court summarized the facts involved:
 "Rodney Connolly and Jack Herriman II were charged in the strangulation murder of Kathy Jo Sands, Connolly's ex-girlfriend. According to evidence presented at trial, Herriman strangled Sands at the suggestion of Connolly, who was not present at the time of the killing. After Herriman telephoned Connolly to say that he 'had done it,' Connolly met him at Sands's apartment and the two men took the victim's car, gold watch, television, adding machine, and bank machine card.
Connolly, Herriman, and a friend used the bank card to withdraw $200 from Sands's account, and they sold or pawned the other items." Connolly, 500 So.2d at 69 (emphasis added).
These events occurred in June of 1983.
In February of 1984, the defendant was convicted for the theft of Ms. Sands's automobile, in violation of Ala. Code 1975, § 13A-8-3(b). That conviction was affirmed on appeal.Connolly v. State, 467 So.2d 970 (Ala.Cr.App. 1985) (no opinion). Later in 1984, the defendant was indicted and convicted for the capital offense involving the robbery and murder of Ms. Sands, in violation of Ala. Code 1975, §13A-5-40(a)(2). That capital indictment alleged murder "in the course of committing a theft of property, to-wit: eleven dollars in lawful currency . . . an Advantage bank card . . . a television set, adding machine, and gold watch." That conviction was reversed on appeal because the trial court failed to instruct the jury on the lesser included offense of murder. Connolly v. State, 500 So.2d 57 (Ala.Cr.App. 1985), affirmed, 500 So.2d 68 (Ala. 1986).
Prior to his retrial for the capital offense, the defendant filed a plea of former jeopardy, claiming, for the first time, that his prosecution for capital murder-robbery was barred by his prior conviction for theft. This plea was denied.
On retrial for the capital offense, the trial court instructed the jury on the lesser included offense of murder, first degree robbery, and second degree theft. The defendant was convicted of murder.
Both the Fifth Amendment to the Constitution of the United States and Section 9 of the Constitution of the State of Alabama guarantee that no person shall twice be placed in jeopardy for the same offense. This guarantee protects (1) against a second prosecution for the same offense after acquittal, (2) against a second prosecution for the same offense after conviction, and (3) against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711,717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Here, we are concerned with the second type of protection. The issue is whether a previous conviction for theft of the victim's automobile bars a subsequent prosecution for murder of that same victim during the course of robbing that victim of property other than the automobile where the taking of all the property occurred as part of the same criminal and factual transaction. Initially, this involves a determination of whether or not theft is the "same offense" as murder during the course of a robbery for purposes of double jeopardy. *Page 441 
"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." Blockburger v. United States,284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Under this test, a lesser included offense is the "same" as the greater offense and a former conviction of the lesser offense bars a prosecution for the greater. Buchanan v. State, 10 Ala. App. 103,105, 65 So. 205 (1913) (conviction or acquittal for petit larceny bars prosecution for grand larceny); Gregg v.State, 55 Ala. 116, 118 (1876) (conviction for petit larceny bars prosecution for grand larceny). "The State cannot elect to prosecute and try a person for a lower grade, and then put him on trial for a higher grade, of the same offense." State v.Blevins, 134 Ala. 213, 32 So. 637, 638 (1902). If the accused has been convicted of a lesser-included offense, he may not thereafter be prosecuted for the greater offense. Illinois v.Vitale, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980);Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187
(1977). "[A] person [who] has been tried and convicted for a crime which has various incidents included in it, . . . cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offense." Ex parte Nielsen,131 U.S. 176, 188, 9 S.Ct. 672, 676, 33 L.Ed. 118 (1889). "Whatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense." Brown, 432 U.S. at 169,97 S.Ct. at 2227.
For purposes of former jeopardy, the felony which provides the component necessary to elevate an intentional killing to capital murder is a lesser included offense of the capital crime. Section 13A-5-41; J. Colquitt, The Death Penalty Laws ofAlabama, 33 Ala.L.Rev. 213, 254 (1982) ("In the ordinary case, lesser included offenses will include some or all lesser degrees of homicide and the lesser degrees of crimes within the definition of the aggravating component. Additionally, lesser included offenses may themselves include lesser offenses supported by the evidence."); E. Carnes, Alabama's 1981 CapitalPunishment Statute, 12 Alabama Lawyer 456, 472 (1981). See alsoSekou v. Blackburn, 796 F.2d 108, 110 (5th Cir. 1986) ("The Double Jeopardy Clause prohibits prosecution and conviction for both felony-murder and the enumerated felony. . . . The underlying felony is considered a lesser-included offense of felony-murder and thus the 'same offense' for double jeopardy purposes."). Therefore, robbery is a lesser included offense of the capital offense involving murder-robbery. Compare Whalen v.United States, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715
(1980) (rape and killing during the course of a rape constitute the "same offense" for double jeopardy purposes).
Furthermore, for purposes of former jeopardy, theft is a lesser included offense of the crime of robbery. Robbery is regarded as an "aggravated" form of theft. Ramsey v. State,441 So.2d 1065, 1067 (Ala.Cr.App. 1983). By statutory definition, robbery can be committed only "in the course of committing a theft." §§ 13A-8-41 through 43. "By its very definition, the crime of robbery . . . necessarily includes the crime of theft. . . ." Ramsey, 441 So.2d at 1067. See Ex parte Hannah,527 So.2d 675 (Ala. 1988). Consequently, for purposes of former jeopardy, theft is a lesser included offense of the capital offense of murder during the course of a robbery. See Ex parteBeverly, 497 So.2d 519, 525 (Ala. 1985) (robbery-intentional killing embraced the lesser included offense of grand larceny).
We conclude that the theft of Ms. Sands's car, watch, currency, television, adding machine, and bank card was one offense and not separate offenses of theft. Consequently, the defendant's conviction for the theft of Ms. Sands's car barred his prosecution for the robbery involving the property other than the car.
The State could not convert a single theft of various items of property into separate offenses by alleging the theft of different *Page 442 
items in separate indictments. All the property was taken during the same transaction and constituted one offense. Such is not permitted.
 "It has been held that a conviction of petit larceny is a bar to a prosecution for grand larceny on the theory that there are no different degrees in the crime of larceny, the intent being the same regardless of the value of the property stolen. Similarly, where the theft of several articles at one and the same time and place constitutes only one indivisible crime, even though the articles belong to different owners, a conviction or acquittal of the theft of one of the articles is a bar to a prosecution for the theft of the others. Moreover, where the stealing of several articles at the same time constitutes only one offense, even though it may be susceptible of division into parts, it is held that a prosecution to final judgment for stealing some of the articles will bar a subsequent prosecution for stealing any of the articles taken at the same time. The rule is to the contrary, however, where articles have been stolen at divers times and places and from different owners, even though pursuant to a conspiracy or plan embracing all the thefts." 50 Am.Jur.2d Larceny § 139 at 315-16 (1970) (footnotes omitted).
"A single crime cannot be split up, or divided, into two or more offenses." Baldwin v. State, 47 Ala. App. 136, 140,251 So.2d 633 (1971) (conviction for assault and battery bars prosecution for robbery). Thomas v. State, 41 Ala. App. 525, 526,138 So.2d 269 (1962) (verdict of guilty of grand larceny constitutes acquittal of robbery charge). "The Alabama cases have long recognized that constitutional double jeopardy provisions, U.S. Const. Amend. V and Ala. Const., Art. I, § 9, prohibit the splitting of a single criminal act so as to justify multiple prosecutions for the identical criminal behavior." Smith v. State, 472 So.2d 677, 684 (Ala.Cr.App. 1984). The rule against splitting one crime into separate offenses was stated in Hurst v. State, 86 Ala. 604, 6 So. 120
(1889), as follows:
 "It has often been decided that a single crime cannot be split up or subdivided into two or more indictable offenses. . . . '[A] series of criminal charges cannot, under our system of jurisprudence, be based on the same offense or criminal act, at least, as concerns the dignity of the same sovereignty. If the state elects, through its authorized officers, to prosecute a crime in one of its phases or aspects, it cannot afterwards prosecute the same criminal act under color of another name.'
 "It is accordingly held by the great preponderance of authority that the stealing of several articles at the same time and place, although they belong to different owners, constitutes but a single indictable crime, and can be prosecuted as such but once. 'An indictment,' says Mr. Freeman, 'could not be found for the larceny of one of the articles, and after the verdict another indictment sustained for the stealing of the remaining articles. Indeed, to put such a power in the hands of the prosecuting attorney would be to render the salutary doctrine of prior jeopardy in many instances practically nugatory.' " 6 So. at 121
(citations omitted.)
The Hurst rule was rejected in McKinney v. State,511 So.2d 220 (Ala. 1987), insofar as it would disallow multiple prosecutions when there are multiple victims. In McKinney, the Alabama Supreme Court abandoned its minority position and joined "the majority of states that allow for multiple convictions when more than one person is injured as the result of a single act." 511 So.2d at 225. The court held that, when a single shotgun blast injures more than one person, multiple prosecutions and convictions should be allowed.
The court's holding in McKinney was limited to a single act resulting in injury to more than one person. We find that theHurst rule, as it applies to separate items of property taken from one victim in one act of theft, is still intact. See Exparte Darby, 516 So.2d 786, 787 (Ala. 1987) ("Thus, possession of a number of different controlled substances will support only one sentence and fine under § 20-2-70"). *Page 443 
This court, dealing with a similar fact situation inFloyd v. State, 486 So.2d 1309 (Ala.Cr.App. 1984), affirmed, Exparte Floyd, 486 So.2d 1321 (Ala. 1986), adhered to the rule against splitting one act of larceny into separate offenses corresponding to the separate items of stolen property. InFloyd, the accused was indicted for a capital offense involving the murder of a taxi driver during a robbery. The State alleged, in separate counts, the felonious taking of the taxicab and the felonious taking of currency. On the premise that the counts charged separate offenses, the accused argued that the State should have been required to elect which count would be submitted to the jury. This court rejected that argument and held that the purpose of the separate counts "was not to charge two or more separate offenses, but to vary thedescription of one and the same offense based upon one and thesame transaction." Floyd v. State, 486 So.2d at 1313 (emphasis added). For present purposes, Floyd is indistinguishable. Here the State split a single theft of the murder victim's vehicle and other property into two offenses by convicting the defendant of theft of the automobile, and then by prosecuting him for murder during the felonious taking of her other property.
 "It is the fixed policy of the law in this jurisdiction that a single crime cannot be split up or subdivided into two or more indictable offenses and, if the state, through its duly constituted officers, in a court of competent jurisdiction, elects to prosecute a crime in one of its phases or aspects it cannot afterwards prosecute the same criminal act under color of another name. . . . In Buchanan v. State, 10 Ala. App. 103-105, 65 So. 205, it was held: 'The state cannot elect to prosecute and try a person for a lower grade and then put him on trial for a higher grade of the same offense.' " Savage v. State, 18 Ala. App. 299, 300, 92 So. 19
(1921).
We conclude that the theft of the various items of Ms. Sands's property constituted one offense, that this theft constituted a lesser included offense of robbery, which was a lesser included offense of the charged capital offense of robbery-murder.
Therefore, we hold that the prosecution of the defendant for the capital offense of murder-robbery after his conviction for theft violated established principles of former jeopardy. Apparently anticipating this conclusion, the State argues that "[e]ven if [the defendant's] conviction for theft barred any further prosecution for theft of the other items charged in the indictment, he still could have been charged with murder and convicted. Thus, with his current murder conviction he is no worse off than he would have been if the State had not been permitted to include a robbery charge with the murder to make it a capital charge. Therefore, any alleged error was, in effect, harmless. . . ." (Appellee's brief at 35.)
We agree that principles of former jeopardy would not have prevented the defendant's prosecution for the murder of Ms. Sands following his conviction for the theft of her automobile. See Colston v. State, 350 So.2d 337 (Ala. 1977) (conviction of robbery of store owner does not bar conviction for murder of cashier where murder was committed during course of robbery). Kinser v. Commonwealth, 741 S.W.2d 648, 654 (Ky. 1987); Annot. 11 A.L.R.3d 834 (1967). However, we reject the State's contention of harmless error.
In Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757,26 L.Ed.2d 300 (1970), the accused was tried for murder and found guilty of manslaughter. His conviction was overturned on appeal. He was retried for murder and again convicted of manslaughter. The United States Supreme Court held that principles of double jeopardy did not prevent the accused from being retried for manslaughter, but since the first verdict was limited to manslaughter, a lesser included offense of murder, the retrial was required to be limited to that lesser offense.398 U.S. at 327, 90 S.Ct. at 1760. In reversing Price's conviction, the Court rejected the contention of harmless error.
 "Because the petitioner was convicted of the same crime at both the first and *Page 444 
second trials, and because he suffered no greater punishment on the subsequent conviction, Georgia submits that the second jeopardy was harmless error when judged by the criteria of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).
 "We must reject this contention. The Double Jeopardy Clause, as we have noted, is cast in terms of the risk or hazard of trial and conviction, not of the ultimate legal consequences of the verdict. To be charged and to be subjected to a second trial for first-degree murder is an ordeal not to be viewed lightly. Further, and perhaps of more importance, we cannot determine whether or not the murder charge against petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence. See United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844 (C.A.2d Cir. 1965), cert. denied, Mancusi v. Hetenyi, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966)." Price 398 U.S. at 331-32, 90 S.Ct. at 1762 (footnote omitted).
In Price, the prejudice to the accused was presumed because "the Court relied on the likelihood that the conviction for manslaughter had been influenced by the trial on the murder charge — that the charge of the greater offense for which the jury was unwilling to convict also made the jury less willing to consider the defendant's innocence on the lesser charge."Morris v. Mathews, 475 U.S. 237, 245, 106 S.Ct. 1032, 1037-38,89 L.Ed.2d 187 (1986). "Price required no showing of actual prejudice because of the serious risk that reprosecution for murder might have led the second jury to compromise by convicting the defendant of the lesser included offense of manslaughter rather than acquitting him of murder." Tapp v.Lucas, 658 F.2d 383, 386 (5th Cir. 1981), cert. denied,456 U.S. 972, 102 S.Ct. 2233, 72 L.Ed.2d 845 (1982).
In both Mathews and Tapp, there was no reliable inference of prejudice present, because, in both cases on retrial, the accused was convicted of the charged offense which was jeopardy-barred. In those cases, the jury's verdict was reduced to a lesser included offense by an appellate court. Mathews,475 U.S. at 246, 106 S.Ct. at 1038; Tapp, 658 F.2d at 386. See also Comment: Morris v. Mathews: A Constitutional Salve forDouble Jeopardy Violations, 38 Mercer L.Rev. 715, 727 (1987). "When a jury convicts a defendant of the [jeopardy-barred] offense charged, it thus necessarily finds all the elements of a true lesser included offense. Under those circumstances, a reduction on appeal to the lesser included offense does not run afoul of the Sixth Amendment, because the jury has found all the elements of the lesser offense." Franks v. Alford,820 F.2d 345, 347 (10th Cir. 1987) (emphasis in original).
Mathews held "that when a jeopardy-barred conviction is reduced to a conviction for a lesser included offense which is not jeopardy barred, the burden shifts to the defendant to demonstrate a reasonable probability that he would not have been convicted of the non-jeopardy-barred offense absent the presence of the jeopardy-barred offense." 475 U.S. at 246, 106 S.Ct. at 1038. That rule does not apply here because the jeopardy-barred conviction was never reduced and the defendant was found guilty of the non-jeopardy-barred offense by the trial jury.
The present case is similar to that presented inPrice, supra. See also Wilkins, supra. In each of those cases, the accused, on retrial, was found guilty of a lesser included offense of the one for which he was being retried. In each case, the court found that there was a reasonable possibility that the deliberations of the jury were affected by the fact that the accused was prosecuted and charged with a jeopardy-barred offense greater than the one for which he was found guilty. In Wilkins, the court held:
 "There could never be any certainty as to whether the jury was actually influenced by the unconstitutionally broad scope of the reprosecution or whether the accused's defense strategy was impaired by this scope of the charge, even if there *Page 445 
were a most sensitive examination of the entire trial record and a more suspect and controversial inquest of the jurors still alive and available." 348 F.2d at 864.
Here, the defendant was tried not only for a jeopardy-barred greater offense but for a jeopardy-barred capital offense. We consider this a significant factor. Compare Beck v. Alabama,447 U.S. 625, 637, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 (1980), wherein the observation was made that "when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense — but leaves some doubt with respect to an element that would justify conviction of a capital offense — the failure to give the jury the 'third option' of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction." See alsoKennedy v. State, 732 S.W.2d 708, 709 (Tex.Ct.App. 1987) ("The indictment [for the attempted capital murder of a police officer] on its face violates appellant's right against double jeopardy. It alleges the very offense of which appellant was previously acquitted [by the jury's verdict of aggravated assault.]")
Prosecuting the defendant for the greater jeopardy-barred capital offense constituted error which, in this case, carried with it a presumption of prejudice, Mathews, supra; Price, supra; Wilkins, supra.
The judgment of the circuit court is reversed and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TYSON, PATTERSON, McMILLAN, JJ., concur.
TAYLOR, J., dissents without opinion.