602 So.2d 443 (1990)
Rodney CONNOLLY
v.
STATE.
1 Div. 90.
Court of Criminal Appeals of Alabama.
November 30, 1990.
On Return to Remand May 17, 1991.
Rehearing Denied June 28, 1991.
*445 Elizabeth H. Shaw, Mobile, for appellant.
Don Siegelman, Atty. Gen., and Robert E. Lusk, Jr., Asst. Atty. Gen., for appellee.
BOWEN, Judge.
The appellant, Rodney James Connolly, was originally convicted and sentenced to life without parole for the 1983 capital murder-robbery of Kathy Jo Sands. That conviction was reversed on appeal because of the trial court's failure to instruct the jury on the lesser included offense of murder. Connolly v. State, 500 So.2d 57 (Ala.Cr. App.1985), affirmed, 500 So.2d 68 (Ala. 1986). Connolly was then tried and convicted for the theft of Ms. Sands's automobile. That conviction was affirmed on appeal. Connolly v. State, 467 So.2d 970 (Ala.Cr.App.1985) (no opinion). After that conviction for theft, Connolly was then retried for capital murder-robbery. He was then convicted of murder and sentenced to life imprisonment. That conviction was reversed on appeal because the prosecution for capital murder-robbery was barred by his prior conviction for the theft of the victim's automobile under principles of former jeopardy. Connolly v. State, 539 So.2d 436 (Ala.Cr.App.1988). In 1989, Connolly was tried and convicted for the non capital murder of Ms. Sands. He was sentenced to life imprisonment without the possibility of parole as a habitual felony offender. This appeal is from that conviction and sentence. The defendant raises five issues on this appeal.

I.
The trial court refused the appellant's written requested charge which stated: "I charge you, members of the jury, that if the evidence convinces you that Stacey Bruner Travathan [sic] is a woman of bad character, and unworthy of belief, then you may disregard her evidence altogether." In refusing this charge, the trial judge stated, "I still don't know, even if you prove bad character that that means you may disregard her testimony."
In reviewing the denial of a requested jury instruction, this Court must determine 1) whether the refusal was preserved for appellate review by proper objection at trial, 2) whether the denial of the requested charge constituted error, and 3) whether that error was prejudicial to the defendant and constitutes reversible error.
In this case, defense counsel preserved this issue for review by proper and timely objection. We specifically reject the State's hypertechnical argument that a requested charge may be properly refused merely because it contains a misspelled word. Goff v. State, 572 So.2d 1283 (Ala. Cr.App.1990) (Bowen, J., concurring specially). See also Kitsos v. State, 574 So.2d 979 (Ala.Cr.App.1990).
The charge requested by the appellant states a correct principle of law. On consideration of the refusal of the identical requested charge on the last appeal of this case, this Court held:
"The refusal of a virtually identical charge was found to constitute reversible error in Ashlock v. State, 367 So.2d 560 (Ala.Cr.App.1978), cert. denied, 367 So.2d 562 (Ala.1979). However, here the court's failure to give the charge was not properly preserved for our review."
Connolly, 539 So.2d at 437.
Here, there was evidence that the witness was a "woman of bad character." See Ashlock v. State, 367 So.2d 560 (Ala. Cr.App.1978), cert. denied, 367 So.2d 562 *446 (Ala.1979). Hence, the refusal of this charge constitutes error. "[O]ur decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility." Chavers v. State, 361 So.2d 1106, 1107 (Ala.1978).
Having determined that the refusal of this charge was error, we must now decide whether such error requires a reversal of this cause. See Kennedy v. State, 291 Ala. 62, 65, 277 So.2d 878, 880 (1973); Rule 45, A.R.App.P.
"Failure to give proposed instructions constitutes reversible error only if the proposed instruction: `(1) was correct, (2) was not substantially covered by others delivered, and (3) concerned a point in the trial so important that the failure to give the requested instruction seriously impaired the defendant's ability to defend himself.' United States v. Sans, 731 F.2d 1521, 1529-30 (11th Cir.1984), cert. denied, 469 U.S. 1111, 105 S.Ct. 791, 83 L.Ed.2d 785 (1985)."
United States v. Williams, 875 F.2d 846, 852 (11th Cir.1989). "This Court has held that the refusal to give a correct requested written charge does not per se import injury and we are authorized to reverse only when the error complained of `has probably injuriously affected substantial rights of the parties,' and this is to be determined only `after an examination of the entire case.'" Kennedy, 291 Ala. at 65, 277 So.2d at 880. Rule 45, A.R.App.P., provides, in pertinent part:
"No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges ... unless in the opinion of the court to which the appeal is taken ..., after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."
In Turner v. State, 238 Ala. 352, 355, 191 So. 396, 398 (1939), the Alabama Supreme Court held:
"In express terms [Supreme Court Rule 45 (which was virtually identical to current Rule 45, A.R.App.P.) ] applies to errors in the refusal of special charges. There can be no error in refusing a charge unless it correctly states a principle of law applicable to some phase of the case.
"The inexorable logic is that although the charge does state a correct principle applicable to the case, no reversal shall follow, unless, in the opinion of the appellate court, after an examination of the entire cause, it shall appear that the error has probably injuriously affected substantial rights of the parties. In other words, the refusal of a proper charge does not per se import injury."
An examination of the entire record convinces this Court that the refusal to give the requested charge in this particular case was not reversible error.
Mrs. Trevathan's testimony was substantially corroborated, although not to the extent necessary for that corroboration, in and of itself, to render the error in the refusal of the requested charge harmless. See Kennedy v. State, 291 Ala. at 65-66, 277 So.2d at 881; Gwin v. State, 425 So.2d 500, 509-10 (Ala.Cr.App.1982), cert. quashed, 425 So.2d 510 (Ala.1983). In Gwin, 425 So.2d at 509-10, this Court held that the refusal of a requested charge covering the principle of disregarding the testimony of a witness of bad character was not reversible error "because [the witness's] testimony in all material aspects, was fully corroborated." In quashing the granting of the petition for a writ of certiorari, the Alabama Supreme Court stated:
"By quashing the writ for failure to comply with Rule 39(k), we are not to be understood as agreeing that Kennedy is authority for the abstract proposition that under all circumstances the corroboration of a witness's testimony renders harmless the error for failing to give the jury instruction which was requested in this case. Kennedy must be construed *447 within its narrow and peculiar factual context."
Ex parte Gwin, 425 So.2d 510, 511 (Ala. 1983).
In Kennedy, the Supreme Court held that although this type of bad-character charge should have been given, its refusal was harmless error. The Court clearly established that such a requested charge does not have to include the additional words "unless corroborated by testimony not so impeached." 291 Ala. at 65, 277 So.2d at 880. In that particular case, however, the court held that the witness's testimony was fully corroborated by another eyewitness to the robbery and by various police officers who apprehended the defendant less than 30 to 40 minutes after the holdup. The witness's wallet was found in the defendant's back pocket. The Court specifically noted that "the defendant offered no witnesses in his own behalf." Kennedy, 291 Ala. at 65, 277 So.2d at 880. The court concluded that the refusal of the charge "while error, was not such error as to have probably injuriously affected the rights of the defendant." Kennedy, 291 Ala. at 66, 277 So.2d at 881. "We feel that for the defendant to have been prejudiced by such error, the jury would have had to have disregarded every shred of the totally uncontradicted evidence presented by the State." Id.
Our review of the entire record convinces this Court that the question in this case was not whether Mrs. Trevathan should be disbelieved because of her bad character, but whether she should be disbelieved because of the discrepancies between her present testimony and the testimony that she had given at Jack Herriman's trial for Ms. Sands's death. See Herriman v. State, 504 So.2d 353 (Ala.Cr.App.1987).[1] In addition, Ms. Trevathan's credibility was subject to attack because she had been granted complete immunity from prosecution for her involvement in the death of Ms. Sands.
Assuming that the appellant did not arrange to have Herriman kill the victim, there is little that can be said about Mrs. Trevathan's character that cannot be said about the appellant's. In this case there were far more significant and pronounced reasons for the jury to reject parts of Mrs. Trevathan's testimony than for the reason that she was a woman of "bad character." She was the lover the defendant had rejected. The appellant had left Mobile in Mrs. Trevathan's car, with some vague mention of arranging a "meeting" in the future. Sometime after the appellant left, Mrs. Trevathan discovered that he had been seeing another woman at the same time he had been seeing her; that in fact, not only had he been living in the victim's apartment, but that he had been living with and had had a romantic relationship with the victim herself.
Furthermore, the jury could have found that Mrs. Trevathan was lying in an effort to protect herself and conceal her own involvement in the crime. The jury could have decided to disbelieve her because she was testifying under a grant of immunity from the prosecution. Mrs. Trevathan admitted that when initially contacted by the police she had been less than honest with them and had placed all the blame on Herriman. Even when she testified in Herriman's trial, she had not revealed the full extent of the appellant's participation in the murder.
Portions of the trial court's oral instructions to the jury dealt with the matter of the weight to be given the testimony of a witness:
"In determining what the facts are you [may] take into consideration any natural interest or bias that a witness may have as a result of any connection with the case.... You may in short use your good common sense in finding the facts.
"The law also provides that if you believe that a witness has deliberately sworn falsely as to a material fact in the case you may, if you wish, disregard this witness's entire testimony. This principle of law would not apply if you believe that a witness made an honest mistake in his or her testimony, only if you believe *448 that that witness deliberately swore falsely, and only then as to a material fact in the case."
"....
"I charge you, members of the jury, that a witness may be discredited or impeached by contradictory evidence by a showing that he or she testified falsely concerning a material matter or by evidence that at some other time the witness has said or done something or failed to say or do something which is inconsistent with the witness's present testimony. If you believe that any witness has been so impeached, then it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you think it deserves.
"I charge you, members of the jury, that a reasonable doubt may arise from a consideration of the testimony elicited on cross examination of witnesses for the State."
"....
"I charge you, members of the jury, that where the prosecution produces a witness, the prosecution vouches for the truth and integrity of that witness. You're instructed that if a witness testifies false in one part of his or her testimony it's to be distrusted in the remaining portion of his or her testimony.
"I charge you, members of the jury, that the credibility of a witness may be attacked by introducing evidence that a witness has made out of court statements which are inconsistent with his or her sworn testimony in court. If you believe from the evidence that a witness has made out of court statements which are inconsistent with his or her testimony in court and that such inconsistencies relate to a material aspect of the case, then you may in such event consider such inconsistencies as going to the credibility of the witness and you may consider them along with all the other evidence in determining what weight that you will give to that testimony."
"....
"I charge you, members of the jury, that the testimony of an alleged accomplice and the testimony of one who provides evidence against a defendant for immunity from punishment or for personal advantage or vindication must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses. You the jury must decide whether the witness's testimony has been affected by any of those circumstances or by his or her interest in the outcome of the case, or by prejudice against the defendant, or by the benefits that he or she has received as a result of being immunized from prosecution. And if you determine that the testimony of such a witness was affected by any one or more of those factors you should keep that in mind that such testimony is always to be received with caution and weighed with great care. You should never convict a defendant or any defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt."
We recognize that the specific principle embodied in the appellant's requested bad character charge was not covered in the oral charge of the trial court. However, for the reasons stated, we find that error to be harmless. We are convinced that the refusal of this charge in no way hindered the appellant's defense and had absolutely no effect upon the fairness or the outcome of his trial. See Wright v. State, 494 So.2d 726, 735-36 (Ala.Cr.App.1985), affirmed, 494 So.2d 745 (Ala.1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1331, 94 L.Ed.2d 183 (1987).

II.
The rule is that upon the remand of a cause to the trial court from an appellate court for proper sentencing under Alabama's Habitual Felony Offender Act, "the State may use at a second sentencing hearing convictions other than those it used at the first hearing, provided that proper notice had been given both times." Jackson v. State, 566 So.2d 758, 760 (Ala.1990).
"The State correctly points out that [Ex parte] Glover [508 So.2d 218 ((Ala. *449 1987)], and [Ex parte] Williams [510 So.2d 135 (Ala.1987) ], stand for the proposition that the Habitual Felony Offender Act cannot be applied if the defendant was not given proper notice before the first sentencing hearing; but those cases have nothing to do with what convictions the State can or cannot attempt to use at a later sentencing hearing. Indeed, Hinton v. State, 473 So.2d 1125 (Ala.1985), and Porter v. State, 505 So.2d 1292 (Ala. Cr.App.1986), both stand for the proposition that the State may use at a second sentencing hearing convictions other than those it used at the first hearing, provided that proper notice had been given both times...."
Jackson, 566 So.2d at 760 (emphasis in original). In our opinion, this same rule applies where a defendant's conviction has been reversed on appeal, and he has been resentenced after a new trial and conviction. Thus, the State may use at the second sentencing only those prior felony convictions of which the defendant was given proper notice before the first sentencing.
This appeal involves the defendant's third conviction. In the defendant's second prosecution, he was sentenced to life imprisonment as a habitual felony offender with two prior felony convictions. At his second trial, the defendant testified in his own behalf and, on direct examination, admitted several prior convictions: one Alabama conviction in May 1984 for the theft of the victim's automobile; one conviction in Oklahoma for auto theft, and convictions for "receiving and concealing stolen property and a couple of breaking and enterings." On cross-examination of the appellant at that second trial, the State proved that he had been convicted in May 1984 in Alabama for the theft of the victim's automobile, and in June 1978 in Michigan for two burglary convictions. At the sentencing hearing, the State introduced evidence of the two prior Michigan convictions. The record in the appellant's second trial, which this Court has examined, does not show that he was given notice that the State would use three prior felony convictions for purposes of the Habitual Felony Offender Act.
At the beginning of the appellant's third trial, the prosecutor stated:
"Mr. Connolly has three prior felony convictions on his record prior to the date of this offense. In previous trials we had only been able to show two. I have oral confirmation from the district Attorney's Office in Oklahoma that there is a third, and they are sending me or supposedly are sending me a certified under the Act a copy of the third conviction which would entail a mandatory life without parole sentence."
Under the legal authority stated above, unless the State can show that the defendant was given actual notice of three prior felony convictions used at his second sentence hearing, the State cannot use those same three prior felony convictions to enhance the appellant's sentence upon his third conviction. Therefore, this cause must be remanded with directions that the appellant's sentence of life imprisonment without the possibility of parole be reduced to life imprisonment, unless the State can show that the appellant was given proper notice of all three convictions before both the second and the third sentence hearings. The trial court is directed to resentence the appellant and make proper return to this court within 60 days of the date of this opinion.
In connection with this argument, the appellant contends that the third conviction, the Oklahoma conviction, was not properly "certified" in this case. Court's Exhibit 1 shows that on October 18, 1979, in the District Court of Greer County, Oklahoma, the defendant pleaded guilty to the felony of larceny of an automobile. According to the judgment entry, the judgment and sentence were "deferred to 10-23-1980 at 1:30 P.M.  Cooperate with State to testify as to the truth if subpoenaed  [defendant] ordered to make restitution to Frank Sullivan @ $600 through Sheriff @ not less than $50 per mo bgn 12-1-79 but all paid by 10-23-80." The judgment entry dated October 23, 1980, recites: "Case called on docket  [defendant] Connolly did not appear. Bench Warrant issued  Bail set $1000.00 to not be served out of State *450 until after 11-10-80 @ 9:30 AM." The records in that automobile larceny case do not show that the judgment and sentence have ever been entered in that case.
"The term `judgment' means the adjudication of the court based upon a plea of guilty by the defendant...." Rule 1(a), A.R.Crim.P.Temp. "The term `sentence' means the pronouncement by the court of the penalty imposed upon the defendant after a judgment of guilty." Rule 1(b). See Rules 26.1(a)(1) and (2), A.R.Crim.P., to become effective January 1, 1991, and Committee Comments. Upon remand, if the State seeks to invoke this prior felony, in addition to showing that the appellant received proper notification, the State should also show that there had in fact been an actual conviction.

III.
We find that the evidence presented at the appellant's third trial is sufficient to sustain his conviction for murder.
Stacey Bruner Trevathan testified that she heard the appellant tell Jack Herriman that he wanted the victim killed. She stated that on June 9, 1983, the appellant told her that Herriman had just killed the victim. She helped the appellant and Herriman withdraw $225 from the victim's checking account using the victim's bank card. She also testified as to the victim's items which she and Herriman pawned.
Dr. Gary Dean Cumberland, an expert in forensic pathology, testified that the victim was killed on the early afternoon of June 9, 1983, and that the cause of death was asphyxia due to strangulation.
Texas Highway Patrolman Ralph Billings testified that he stopped the appellant in Texas on June 11, 1983, for speeding. Trooper Billings testified to the statement the appellant had given him on June 11, 1983, in which the appellant essentially confirmed Mrs. Trevathan's testimony, except that the appellant asserted that Herriman had killed the victim without his prior knowledge, assistance, or support. The State also introduced a statement that the appellant gave to Captain Wilbur Williams of the Mobile Police Department on June 12, 1983. Williams also testified to statements made by the appellant while being transported from Texas to Alabama.
Captain Vincent Richardson of the Mobile Police Department testified that, after Herriman's trial for the victim's murder, the appellant telephoned him and told him that "Herriman was not telling the exact truth about the case, that the girl's death had been planned."
Attorney Al Pennington represented Herriman at his trial. He testified that, after that trial, the appellant telephoned him and told him that "he [appellant] felt responsible for the death of Kathy Jo Sands," that he and Stacey Bruner "had discussed getting rid of" Ms. Sands, and that "he's the one that went through [the victim's] purse ... and took certain items out."
Ricky Mealor testified that the appellant told him that "the bitch will pay ... I'm going back, and I'll get her shit." Mealor also testified that Herriman "worshiped" the appellant.
The appellant did not testify at his third trial. He did not request that the jury be charged on the corroboration of accomplice testimony. In this case, the issue of whether Mrs. Trevathan was an accomplice was one for the jury. "Except where the state's evidence undisputedly makes the witness an accomplice, the defendant has the burden of showing the witness's complicity." Jacks v. State, 364 So.2d 397, 403 (Ala.Cr.App.), cert. denied, 364 So.2d 406 (Ala.1978). "Whether a witness is an accomplice may be a question of law or fact, depending on the circumstances. Where there is a doubt or dispute concerning the complicity of a witness and the testimony is susceptible to different inferences on that point, the question is for the jury." Ex parte Bell, 475 So.2d 609, 611-12 (Ala.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985). "For the corroboration requirement of [Ala.Code 1975, § 12-21-222] to apply, however, `it must clearly appear that the witness in question is an accomplice.'" Ex parte Bates, 461 So.2d 5, 6 (Ala.1984). Furthermore, the defendant's *451 own statements to the police and others provided sufficient corroboration of Mrs. Trevanthan's testimony, even if she is considered an accomplice. Snoddy v. State, 75 Ala. 23, 24-25 (1883) ("It was for the jury to determine the weight or degree of credit which should be attached to the confession, and to say whether it satisfactorily corroborated that portion of the statement of the accomplice which connected the defendant with the commission of the offense.").
The trial court properly denied the defendant's motion for judgment of acquittal.

IV.
The trial court properly refused the following written charge requested by the appellant:
"I charge you, members of the jury, that if you feel a prosecution witness testified falsely as to material facts, and that the State prosecutor solicited such false testimony, then you are bound to find the defendant innocent."
The case cited by the defendant, Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957), stands for the proposition that the prosecutor's knowing use of perjured testimony denies an accused due process of law. In Ex parte Frazier, 562 So.2d 560, 570 (Ala.1989), the Alabama Supreme Court held that a defendant need not "show prosecutorial misconduct in presenting perjured testimony as a prerequisite to receiving a new trial." However, neither case supports the conclusion that the requested jury charge is proper. "Statements of law in judicial opinions are not always proper for jury instructions in other cases.... Lifting language from an opinion and embodying it in a written charge does not of itself make it a correct instruction to the jury." Knight v. State, 273 Ala. 480, 490, 142 So.2d 899, 909 (1962).
Here, the requested charge was improper, incorrect, and misleading because it was not limited to the testimony of a particular witness upon whose testimony rested the guilt or innocence of the appellant. In this case, the conviction was not "dependent solely upon the witness' testimony with which the charge dealt." Outler v. State, 147 Ala. 39, 42, 41 So. 460, 461 (1906). The requested charge was not premised on the fact that the guilt of the defendant was predicated upon the testimony of a single witness. Compare Jackson v. State, 136 Ala. 22, 30, 34 So. 188, 191 (1903).
Moreover, there is a distinction between perjured testimony and false testimony. Here, the charge is misleading because of the omission of the word "willful." Higginbotham v. State, 262 Ala. 236, 241, 78 So.2d 637, 641 (1955). "To justify the jury in entirely disregarding the testimony of the witness, they must have found that the material portions of said declaration were willfully false. Such is the holding of our authorities." Booth v. State, 247 Ala. 600, 604, 25 So.2d 427, 430 (1946), and cases cited therein. "It is not sufficient that a witness testify falsely that his evidence may be disregarded, but the testimony must be willfully or corruptly false. The witness might testify falsely through mistake, and at the same time be entitled to credence." Reeder v. State, 210 Ala. 114, 119, 97 So. 73, 77 (1923). See also Franklin v. Cannon, 565 So.2d 119, 121 (Ala. 1990); Hamilton v. State, 147 Ala. 110, 113, 41 So. 940, 941 (1906); Prater v. State, 107 Ala. 26, 32-33, 18 So. 238, 240 (1895).

V.
The appellant argues that his prosecution for murder after his conviction for theft violated his constitutional right against double jeopardy. This issue was not properly preserved in the trial court because it was first raised in the appellant's motion for new trial. The defense of double jeopardy should be raised by a pretrial motion made in accordance with Rule 16.3, A.R.Crim.P.Temp. See Comment to Rule 16.2(a), A.R.Crim.P.Temp. See also Ex parte Sales, 460 So.2d 1252 (Ala. 1984).
In Connolly, 539 So.2d at 443, this Court held: "We agree that principles of former jeopardy would not have prevented the defendant's prosecution for the murder of Ms. Sands following his conviction for the theft of her automobile." Because of our finding that this issue is procedurally *452 barred, we need not and do not decide whether application of Grady v. Corbin, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), would alter that decision.
Our review of this case convinces us that the appellant received a fair trial. The judgment of the circuit court is remanded as directed in Part II of this opinion.
REMANDED WITH DIRECTIONS.
All Judges concur.

ON RETURN TO REMAND
BOWEN, Judge.
This case was remanded to the circuit court with directions that the appellant's sentence of life imprisonment without the possibility of parole be reduced to life imprisonment, unless the State could show that the appellant was given proper notice of all three convictions before both the second and third sentence hearings. This action was taken on authority of Jackson v. State, 566 So.2d 758, 769 (Ala.1990). See page 445. "The decisions of the supreme court shall govern the holdings and decisions of the courts of appeals." Ala. Code 1975, § 12-3-16.
At the resentencing hearing on remand, the prosecutor admitted: "I cannot comply with what the Court of Criminal Appeals says. The State of Alabama was not aware of the three prior convictions at the time of the second sentencing. We were at the time of the third sentencing." The trial court then sentenced the appellant to life imprisonment.
The appellant's conviction for noncapital murder and his sentence to life imprisonment are affirmed.
OPINION EXTENDED; AFFIRMED.
All Judges concur.
NOTES
[1] Herriman was convicted of capital murder-robbery and sentenced to life without parole.