[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 345 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 346 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 347 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 348 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 349 
Jimmy Lee Dill was indicted for capital murder in violation of § 13A-5-40(a)(2), Code of Alabama 1975. He was found "guilty as charged in the indictment" and was sentenced to death. The record reveals that the victim, Leon Shaw, drove to Terry Dill's house on the afternoon of February 8, 1989. Shaw was not supposed to be driving because he was serving time at the Federal Work Release Center for a drug violation. Shaw was, however, allowed to leave the center to go to work. He operated the Rose Boutique, which he owned with his wife, Junatha Shaw. Terry Dill left the house and got in the car with Shaw. The appellant was in the front seat with Shaw. Shaw told Terry Dill that the appellant wanted to buy drugs from Shaw.
The testimony reveals that Terry Dill was a former cocaine addict who had sold cocaine with Shaw for four years. Shaw would pay Terry Dill to bring him customers.
Shaw, Dill, and the appellant ran into Jacqueline Ball and Freddie Carter near a church on 85th Street. Shaw was still driving the car and Terry Dill was sitting in the backseat behind him. The appellant was still in the front passenger seat. Apparently, Shaw and the appellant got out of the car. Shaw talked to Jacqueline Ball, and the appellant talked to Freddie Carter. Shaw was carrying a black pouch in which he normally kept cocaine and money. Shaw had at least $200 in his hand.
After Ball and Carter left, the appellant asked Shaw if he would give him some cocaine until he could get the money to pay for it. Shaw refused. They left for Druid Hills, where the work release center was located, because Shaw had to sign in at the center. When they got to Druid Hills, Shaw's beeper went off. They all got out of the car and Shaw made a telephone call. They went to the Curb Market and Shaw bought wine coolers. Shaw had a "folded wad of money." (R. 481.) When they left the store, Shaw had everyone in the car switch places so that the people at the center would not see him driving. Terry Dill was now driving and the appellant was in the backseat. Terry Dill drove to the center.
The appellant again asked Shaw for cocaine. Shaw told him that he would give him the cocaine when the appellant got some money. He also showed the appellant a half ounce of cocaine. The appellant asked for cocaine again when they pulled up to the center. Shaw went to the building. He pulled a "big wad of money" out of his pocket. (R. 395.) There was so much money that it could not be rolled up. He told the case manager at the center that he had just left the Rose Boutique and was going to make a deposit.
While Shaw was inside the center, the appellant said to Terry Dill, "You don't believe I'll rob him or shoot him." (R. 490.) The appellant continued to talk about killing Shaw. When Shaw got back in the car, the appellant said that he would shoot Shaw if he did not give him some cocaine. After they drove off, there was a gunshot. Blood spurted onto Terry Dill. The appellant had a small automatic pistol, approximately .25 or .22 caliber. The appellant told Terry Dill to be quiet and keep driving. The appellant pulled the trigger as if he was going to shoot Shaw again. They eventually stopped in an alley. The appellant searched Shaw and took the money and cocaine. The appellant then got a rag and started wiping fingerprints off of the car. Terry Dill ran away. The appellant also ran away. Terry Dill called his girlfriend to pick him up. He went home later that evening.
Shaw was taken to the hospital where emergency brain surgery was performed. The bullet entered the left, back side of his brain. Shaw was unconscious. He had abnormal movement in his extremities which indicates that the brain is functioning extremely abnormally. Both a feeding tube and breathing tube were inserted. He was discharged from the hospital on April 26, 1989, because there was nothing more the hospital could do for him. Shaw could *Page 351 
not function independently and required round-the-clock care. Shaw eventually pulled the feeding tube out. However, his doctor said he would not replace the tube since he could eat and drink by mouth. Shaw was readmitted to the hospital on October 31, 1989. He never regained consciousness and died on November 22, 1989. Shaw's doctors testified that he died of complications from a gunshot wound to the head.
Forensic evidence revealed that the bullet removed from Shaw's head was consistent with a .22 caliber projectile. The characteristics of the wound were consistent with a contact gunshot wound.
The appellant gave a statement to the police on February 18, 1989. He stated that he and Terry Dill were with Shaw and that they drove to North Birmingham. Terry Dill was driving the car, Shaw was on the front passenger seat, and the appellant was in the backseat behind Terry Dill. The appellant stated that Shaw's door opened and that he heard a shot from behind Shaw. The appellant was then asked how Shaw was shot from behind without the window being shot out of the car. The appellant then stated that Shaw was actually getting into the car when someone ran up to Shaw's door. The appellant stated that he heard a gunshot. He and Terry Dill got out and ran. The appellant then stated that after hearing the shot, they drove off and a car followed them. They drove to an alley, jumped out of the car, and ran away. The appellant stated that Shaw had some cocaine in a black bag but he did not see any money.
The appellant raises 22 issues on appeal. We note that most of the arguments raised on appeal were not raised at the trial court level.
 "[S]ince this is a death case, we must review the [alleged] error before us to see if it constitutes plain error and, thus, should be noticed despite the lack of a proper objection by defense counsel. Rule 45A, A.R.A.P. In considering what constitutes 'plain error' in a capital case, the Alabama Supreme Court has looked to the federal court's interpretation of what is 'plain error.' See Ex parte Harrell, 470 So.2d 1309 (Ala. 1985); Ex parte Womack, 435 So.2d 766 (Ala. 1983) [cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983)].
 "In United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the Supreme Court stated that the plain error doctrine should be used to correct only 'particularly egregious errors' . . . which are those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings' . . . . The plain error rule should be applied 'solely in those circumstances in which a miscarriage of justice would otherwise result.' Young, supra, 105 S.Ct., at 1047. . . .
 "Furthermore, the court noted that the plain error doctrine requires that the 'claimed error not only seriously affects "substantial rights" [of the defendant], but that it had an unfair prejudicial impact on the jury's deliberations. Only then would [a] court be able to conclude that the error undermined the fairness of the trial and contributed to a miscarriage of justice.' Young, supra, 105 S.Ct., at 1047, n. 14."
Hooks v. State, 534 So.2d 329, 351-52 (Ala.Crim.App. 1987),aff'd, 534 So.2d 371 (1988), cert. denied, 488 U.S. 1050,109 S.Ct. 883, 102 L.Ed.2d 1005 (1989). See also Kuenzel v. State,577 So.2d 474 (Ala.Crim.App. 1990), aff'd, 577 So.2d 531
(Ala. 1991); Ex parte Hinton, 548 So.2d 562, 568 (Ala.), cert.denied, 493 U.S. 969, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989). Our examination of the record in this case reveals no plain error.
 I
The appellant first contends that the trial court erred in failing to grant a mistrial when Officer Forrest Duncan referred to the appellant's parole officer during his testimony. The appellant did not object to the testimony. The record reveals that the following occurred during the direct examination of Officer Duncan: *Page 352 
 "Q: After Terry Dill made a statement, what, if anything, did you or Lieutenant Jordan do after that?
"A: I attempted to locate Jimmy Dill.
"Q: All right. How did you attempt to do that?
 "A: By several means. Through some of his relatives and through his parole officer.
 "Q: And did this start on the very day that Terry Dill made the statement, did your efforts start then?"
(R. 619-620.) Following this exchange, this subject was never raised again either on direct or on cross-examination. Following Duncan's testimony and out of the jury's presence, the appellant moved to exclude the statement and moved for a mistrial. The court denied the motion for mistrial but offered to instruct the jury to exclude the statement. The appellant asked for time to think about the offer. The appellant later refused the offered curative instruction because such an instruction might further emphasize the statement.
Although the failure to object does not preclude review in a capital case, such failure weighs against any claim of prejudice. Kuenzel; Ex parte Kennedy, 472 So.2d 1106 (Ala.),cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325
(1985). "Plain error is error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity, and public reputation of the judicial proceedings." United Statesv. Butler, 792 F.2d 1528, 1535 (11th Cir.), cert. denied,Waites v. United States, 479 U.S. 933, 107 S.Ct. 407,93 L.Ed.2d 359 (1986).
We find that the testimony does not rise to the level of plain error. The statement was elicited incidentally and was never mentioned again. The appellant did not object to the statement. Furthermore, the appellant refused an offer of curative instructions by the court. We note that " 'an indirect reference to the defendant's involvement in other crimes is not incurably harmful to the accused, and any possible prejudice may be eradicated by the trial judges's prompt curative instruction to the jury.' " McDonald v. State, 516 So.2d 868,871 (Ala.Crim.App. 1987) (quoting Brooks v. State,462 So.2d 758, 760 (Ala.Crim.App. 1984)). See also Kendrick v. State,444 So.2d 905 (Ala.Crim.App. 1984). Our review of the record leads us to conclude that the appellant believed that the statement attracted so little attention that a curative instruction was unnecessary or that, by refusing a curative instruction, the appellant was attempting to invite error. When examined in the context of the entire case, we do not believe that the statement was so egregious that it "seriously affect[ed] the fairness, integrity or public reputation of [the] judicial proceedings." Hooks at 351-352.
 II
The appellant contends that the court erred in failing to give several requested jury charges. These will be specifically addressed in the subsections below. We note that the appellant did not object to the court's failure to give these charges.
 A
The appellant contends that the trial court erred in failing to charge the jury on the lesser included offenses of first degree robbery, first degree theft, or second degree theft. We disagree.
A charge on a lesser included offense should be given when there is a reasonable theory from the evidence to support such a proposition. Ex parte Julius, 455 So.2d 984 (Ala. 1984),cert. denied, 469 U.S. 1132, 105 S.Ct. 817, 83 L.Ed.2d 809
(1985). Clark v. State, 451 So.2d 368 (Ala.Crim.App. 1984). A trial judge, however, may refuse to charge on a lesser included offense when it is clear to the judicial mind that there is no evidence to support such a charge. Mullis v. State,545 So.2d 205, 211 (Ala.Crim.App. 1989); Gurganus v. State,520 So.2d 170 (Ala.Crim.App. 1987). A court should not charge the jury on a lesser included offense "unless there is a rational basis for a verdict convicting the defendant of the included offense." Ala. Code 1975, § 13A-1-9(b). *Page 353 
Furthermore, an accused is not entitled to a charge on a lesser included offense when he denies committing the crime itself and the State's evidence does not support such a charge.Daly v. State, 442 So.2d 143 (Ala.Crim.App. 1983); Williamsv. State, 377 So.2d 634 (Ala.Crim.App.), cert. denied,377 So.2d 639 (Ala. 1979).
Our review of the record leads us to the conclusion that there was no rational basis in the evidence for a charge on lesser included offenses. Furthermore, the record reveals that the appellant's defense was the contention that someone else shot Shaw from outside Shaw's car. We find that the trial court did not err in refusing to charge on first degree robbery, first degree theft, or second degree theft. See generallyDaniels v. State, 534 So.2d 628 (Ala.Crim.App. 1985), aff'd,534 So.2d 656 (Ala. 1986), cert. denied, 479 U.S. 1040,107 S.Ct. 898, 93 L.Ed.2d 850 (1987); Clark v. State.
 B
The appellant next contends that the trial judge erred in refusing his requested jury charges numbers one and two. Both instructions concern the reasonable doubt standard. A review of these charges leads us to conclude that they were properly refused because they were confusing and misleading. Bogan v.State, 529 So.2d 1029 (Ala.Crim.App. 1988); Payne v. State,419 So.2d 286 (Ala.Crim.App. 1982). Furthermore, the jury was thoroughly and properly instructed on reasonable doubt.
 C
The appellant next contends that the trial court erred in failing to give what he terms the following "bad character" charge:
 "In your sole discretion, if you see fit to do so, you may disregard the testimony of any witness whom you find to be of 'bad character or unworthy of belief under oath.' " (R. 938.)
The appellant bases his argument on this court's decision inAshlock v. State, 367 So.2d 560 (Ala.Crim.App. 1978), cert.denied, 367 So.2d 562 (Ala. 1979). Even assuming that there was evidence presented that some of the witnesses were persons of bad character, the charge was not a correct statement of law and was misleading. See Bogan and Payne. First, the charge would have improperly allowed the jurors to disregard a witness's testimony in their sole discretion. A finding of bad character, however, must be based on the evidence. Unlike the charge in Ashlock, the charge also failed to refer to a specific witness. Thus, it failed to discriminate between a witness whose character was not in issue and a witness whose character may have been in issue.
Even if the appellant's charge had been a correct statement of law, any error in refusing to give the charge would have been harmless because there were far more significant reasons for the jury to reject certain of the witnesses's testimony other than for the reason that they were persons of "bad character".[1] Connolly v. State, 602 So.2d 443 (Ala.Crim.App. 1990). The jury was also thoroughly and properly instructed on those other reasons. Thus, even had a correct charge been presented, any error would have been harmless. See, e.g.,Connolly.
 D and E
The appellant contends that the trial court erred in failing to give his requested charges numbers seven through nine. Charge number seven concerns the credibility of the State's witnesses and the burden of proof. Charges eight and nine concern the credibility of Terry Dill and the burden of proof. The failure to give a proposed jury instruction constitutes reversible error only if such instruction (1) was correct, (2) was not substantially covered by the court's charge, and (3) concerned *Page 354 
a point in the trial which was so important that the failure to give the instruction seriously impaired the defendant's ability to defend himself. United States v. Sans, 731 F.2d 1521,1529-30 (11th Cir. 1984), cert. denied, 469 U.S. 1111,105 S.Ct. 791, 83 L.Ed.2d 785 (1985); Connolly. Our review of the record reveals that the proposed charges were misleading and confusing. Bogan; Payne. Furthermore, the trial court thoroughly charged the jury on the credibility of the witnesses and the State's burden of proof. Thus, the trial court did not err in refusing to give these requested charges.
 F
The appellant next contends that the trial court erred in failing to give the jury a requested instruction that the defendant could not be convicted of robbery-murder, the charge set out in the indictment, if the conviction was predicated solely on the fact that the defendant took cocaine from the victim. This argument has no merit. The trial court correctly refused the instruction as it is confusing and misleading.Bogan; Payne.
 III
The appellant next contends that the State exercised its peremptory strikes to remove black jurors from the jury venire in violation of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The record reveals that there were 13 black jurors on the jury venire. The State struck six black jurors and the appellant struck one. Six black jurors served on the jury. Although the trial court found that the appellant did not present a prima facie case of racial discrimination, it required the prosecution to state the reasons for its strikes. The appellant argues that the State did not strike one white juror who had the same characteristics as the black jurors who were struck. The record reveals that the prosecutor planned to strike all single jurors. She stated that the most favorable juror in a case involving drugs is one who is older, married, with a stable job and children. The prosecutor stated that the white, single juror was left on the panel accidentally. She thought he had already been struck for cause. Apparently, she showed the trial court her strike sheet which indicated that she had marked through that juror's name as having been struck. The record reveals that the black jurors who served on the jury had substantially those characteristics she stated made a favorable juror. An older, single, white juror was also struck by the State even though she otherwise appeared to be a good juror, as was a single white male.
We need not address the issue of whether the appellant presented a prima facie case of racial discrimination, as it is clear from the record that no such discrimination occurred. Prior decisions of this court have held that age, marital status and employment status may be race-neutral reasons for striking jurors. Warner v. State, 594 So.2d 664
(Ala.Crim.App. 1990); Stephens v. State, 580 So.2d 11 (Ala.Crim.App. 1990) aff'd, 580 So.2d 26 (Ala.Crim.App. 1991). We find the reasons given by the prosecutor to be race-neutral under the circumstances of this case. Furthermore, the record reveals that the State struck white jurors for substantially the same reasons as black jurors. "Such evidence of neutrality may overcome the presumption of discrimination." Bedford v. State,548 So.2d 1097, 1098 (Ala.Crim.App. 1989). We find that the State did not use its peremptory strikes in a racially discriminatory manner. See, e.g., Singleton v. State,553 So.2d 689 (Ala.Crim.App. 1989); Bedford; Mathews v. State,534 So.2d 1129 (Ala.Crim.App. 1988).
 IV
The appellant next contends that his right to counsel was violated by statements made by the prosecutor that invited the jury to punish the appellant for exercising his constitutional right to counsel. This argument has no merit. We have carefully reviewed the record and can find no comments made by the prosecutor that even impliedly referred to the appellant's right to counsel. The comments cited by the appellant were either proper replies in kind or proper comments on the appellant's *Page 355 
theory of the case. Furthermore, the appellant failed to object to any of the cited comments. Even if such comments had been error, they certainly did not rise to the level of plain error.See Ex parte Wilhite, 485 So.2d 787 (Ala. 1986); Martin v.State, 548 So.2d 488 (Ala.Crim.App. 1988), aff'd,548 So.2d 496 (Ala.), cert. denied, 493 U.S. 970, 110 S.Ct. 419,107 L.Ed.2d 383 (1989).
 V
The appellant next contends that the State improperly commented on his right to remain silent and on his failure to testify. He cites several instances which he deems to be reversible error.
The appellant contends that the State improperly commented on his right to remain silent during voir dire when the prosecutor remarked that "Mr. Dill says that someone else did it?" (R. 26.) When viewed in context, this statement was nothing more than a reference to the appellant's statement which was later admitted into evidence by the State. See Grady v. State,391 So.2d 1095 (Ala.Crim.App. 1980). The comment was in no manner a comment on the appellant's right to remain silent.
The appellant also contends that during closing arguments the prosecutor referred to the appellant's silence by stating that Terry Dill was the "only one" from whom the jurors heard. (R. 671.) As we read the statement in the context of closing arguments, the comment was not a comment on the appellant's silence. The prosecutor was arguing that Terry Dill was the only one who told the truth about the incident. The prosecutor then went through a lengthy summation of all of the testimony which corroborated Terry Dill's testimony. The prosecutor was responding to a very lengthy argument by appellant's counsel which attacked Terry Dill's credibility. Furthermore, the appellant's statement was admitted into evidence. As we read the argument, it was a proper reply in kind to the appellant's argument and an appropriate comment on the believability of the appellant's version of the incident.
"[W]ide latitude is given the State's prosecutors when a response is made during closing argument to an argument previously made by opposing counsel." Mitchell v. State,480 So.2d 1254, 1257 (Ala.Crim.App. 1985). See also Touart v.State, 562 So.2d 625 (Ala.Crim.App. 1989). We find no error in the prosecutor's statement. See, e.g., Sullivan v. State,394 So.2d 76 (Ala.Crim.App. 1981). We note that the appellant failed to object to the comment. Although such failure to object does not preclude review in a capital case, it weighs against any claim of prejudice. Ex parte Kennedy, supra. Even if the statement was error, it was not so egregious as to "seriously affect the fairness or integrity of the judicial proceedings." Ex parte Womack, 435 So.2d 766, 769 (Ala.), cert.denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983).
The appellant next contends that the prosecutor improperly commented on his right to remain silent by stating that all of the medical evidence negated everything that the appellant told the officers in his statement. He also contends that it was error for the prosecutor to engage in a "pretend cross-examination" of the appellant. Our review of the record reveals that neither of these instances was a reference to the appellant's silence. The prosecutor was simply arguing that the medical evidence negated the appellant's theory of the case that someone outside the car shot Shaw. The "pretend cross-examination" was simply proper closing argument which pointed out the inconsistencies in the appellant's theory of the case. In both instances cited by the appellant, the prosecutor was merely pointing out the appellant's defense and inferentially calling upon the jury to disbelieve it. See,e.g., Bates v. State, 549 So.2d 601 (Ala.Crim.App. 1989);Sullivan; Grady. We note that the appellant failed to object to either of the complained of instances. Even if the remarks were improper, they certainly do not rise to the level of plain error. See Womack.
The appellant next contends that the prosecutor also improperly commented on his prearrest silence in violation ofEx *Page 356 parte Marek, 556 So.2d 375 (Ala. 1989). A review of the record reveals that the cited remarks were proper replies in kind. The appellant strenuously argued during closing arguments that Terry Dill was not worthy of belief because he did not go to the police until four days after the incident. The State's response merely pointed out that if Terry Dill's version was not worthy of belief because he delayed going to the police, the appellant's version of the facts was likewise not worthy of belief because he also did not go to the police until several days after the incident. The prosecutor was simply arguing that if Terry Dill's testimony was not credible because of the delay, then that reasoning also applied to the appellant's version of the facts. In order to determine whether a prosecutor's statement is improper, it must be examined in its context and in light of what transpired, "that is, in light of the preceding argument of defense counsel to which the prosecutor's argument was an answer." Henderson v. State,460 So.2d 331, 333 (Ala.Crim.App. 1984) (citations omitted). Seealso Touart. "Remarks or comments of the prosecuting attorney, including those which might otherwise be improper, are not grounds for reversal when they are invited, provoked, or occasioned by accused's counsel and are in reply to or retaliation for his acts and statements." Id. The prosecutor's comments were a proper reply in kind. Furthermore, the appellant failed to object to these comments. Thus, this weighs against any claim of prejudice. Ex parte Kennedy. Even if the remarks constituted error, they did not rise to the level of plain error. See Ex parte Womack.
The appellant finally argues that the prosecutor commented on the appellant's silence when she referred to the appellant's writing a note to his attorney. As we read the statement in the context of the closing arguments, the comment was again a reference to the appellant's contention that a person outside of the car shot Shaw. We again note that no objection was made to the remark. Even if the remark constituted error, it certainly did not rise to the level of plain error. See Exparte Womack.
 VI
The appellant argues that he is entitled to a new trial due to several instances of prosecutorial misconduct. Some of these arguments have been previously addressed by this court in this opinion. We will address the remaining arguments separately below.
 A
The appellant's first claim of prosecutorial misconduct involves a portion of the prosecutor's closing argument at the guilt stage of the trial in which she stated that the appellant believed he could get whatever he wanted and take whatever he needed from anybody. She further stated that the appellant believed that no man could punish him and that God was the only one who could punish him. The argument that the appellant claims to be error constitutes approximately two pages of the record. (R. 784-786.) The appellant contends that the prosecutor's argument constituted a "metaphysical tirade" and was prejudicial and inflammatory. We note that no objection was made to this portion of the closing argument. We have carefully reviewed the prosecutor's statements. "This court has concluded that the failure to object to improper prosecutorial arguments . . . should be weighed as part of our evaluation of the claim on the merits because of its suggestion that the defense did not consider the comments in question to be particularly harmful." Kuenzel, (quoting Johnson v. Wainwright,778 F.2d 623, 629, n. 6 (11th Cir. 1985)).
" '[C]ounsel in the trial of any lawsuit has the unbridled right (to be sure, duty) to argue the reasonable inferences from the evidence most favorable to his client.' "Kuenzel, (quoting Ex parte Ainsworth, 501 So.2d 1269, 1270
(Ala. 1986)). Prosecutors should be allowed wide latitude in their exhortations to the jury. Armstrong v. State,516 So.2d 806 (Ala.Crim.App. 1986); Varner v. State, 418 So.2d 961
(Ala.Crim.App. 1982). The conduct by the accused during the trial is a proper subject of comment. Haywood v. State,
 *Page 357 501 So.2d 515 (Ala.Crim.App. 1986). Furthermore, "[i]n a proper case, the prosecuting attorney may characterize the accused or his conduct in language which, although it consists of invective or opprobrious terms, accords with the evidence in the case."Nicks v. State, 521 So.2d 1018, 1023 (Ala.Crim.App. 1987),aff'd, 521 So.2d 1035 (Ala.), cert. denied, 487 U.S. 1241,108 S.Ct. 2916, 101 L.Ed.2d 948 (1988).
The prosecutor's remarks were legitimate inferences drawn from the evidence or proper comments on the appellant's conduct during the trial. There was evidence presented that the appellant stated that the State would have no case if Terry Dill did not testify. He also stated that the State had no case during the State's closing argument. There was also testimony that several days prior to the trial the appellant stated that he had asked God to forgive him for what he had done and that no one else should punish him for what he had done. Thus, the above-cited portion of the prosecutor's argument was not error. Even if it did constitute error, however, it does not rise to the level of plain error. " 'Plain error is error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity and public reputation of the judicial proceedings.' " Kuenzel, (quoting United States v. Butler, 792 F.2d 1528,1535 (11th Cir.), cert. denied, Waites v. United States,479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986)).
 B
The appellant argues that the prosecutor improperly expressed her personal opinion or professional judgment during closing arguments. We note that the appellant failed to object to any of the instances he now cites as error. Although the failure to object does not preclude our review in this case, it does weigh against any claim of prejudice. See Kuenzel. The appellant contends that the prosecutor erred during the penalty stage closing argument when she asked the jurors to do their duty under the law. Although the prosecutor's argument was improper, we do not find that it rose to the level of plain error. The statements "were not such as to undermine the fairness of the trial and contribute to a miscarriage of justice." Martin v.State, 548 So.2d 488, 495 (Ala.Crim.App. 1988), aff'd,548 So.2d 496 (Ala.), cert. denied, 493 U.S. 970, 110 S.Ct. 419,107 L.Ed.2d 383 (1989) (quoting United States v. Young,470 U.S. 1, 16, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985)). When looking at the prosecutor's remarks in context, it is clear that she was asking the jury to enforce the law, and as prescribed by law, impose the death penalty. After correctly discussing the applicable law, she asked the jurors to do their duty "under the law." (R. 858.) Thus, although we find that the prosecutor's remarks were inappropriate, when examined in the context of the entire closing argument, they do not rise to the level of plain error. See Kuenzel.
The appellant also contends that the prosecutor improperly argued her personal opinion when comparing the appellant's case to an earlier capital murder case. During a brief portion of her closing argument the prosecutor referred to a prior capital murder case in which many people sympathized with the victim. She then stated that nobody had sympathy for Leon Shaw, that she had no sympathy for him, and that she did not ask the jury to have sympathy for him. Our review of the remarks in the context of the prosecutor's entire closing argument reveals that the prosecutor was simply asking the jury to convict the appellant even though the evidence revealed that the victim was a drug dealer. She was asking the jury not to allow the victim's character to affect the verdict. Her argument may not have been based on facts in evidence, but it was certainly not based on her personal opinion. We do not interpret the prosecutor's comments as an attempt to cajole the jury into reaching a verdict that was based on her importance or credibility. See Kuenzel. Even if the comments constituted error, they do not rise to the level of plain error. SeeKuenzel. *Page 358 
The appellant next contends that the following argument of the prosecutor constituted an improper expression of personal opinion or professional judgment concerning one of the witnesses:
 "Junatha Shaw, mother of two, two prior felony convictions for drugs, and shooting into an occupied dwelling, with a revocation pending on a theft case. She will get no sympathy I can guarantee from my office. But she can't stop either." (R. 669.)
When viewed in context, these remarks were part of an argument on the character of the witness based on the evidence presented. Furthermore, the witness testified that she was not going to receive anything from the district attorney's office in exchange for her testimony and thus rebutted any inference to the contrary. When viewed in context, the prosecutor's comments were legitimate inferences based on the evidence. "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." United States v. Young,470 U.S. at 11, 105 S.Ct. at 1044. Although the prosecutor could have chosen more appropriate language to make the same argument, her comments do not constitute reversible error. Furthermore, the appellant failed to object to this portion of the closing argument. Even if error, the comments certainly do not rise to the level of plain error. See Kuenzel; Ex parteWomack.
The appellant also objects to the following argument made by the prosecutor:
 "The police don't care. That's always a good smoke screen. That's always something to talk about. Where are the fingerprints? Where are the ballistics? Well, you're right. When the police don't know who in the world to go to until eight days later, certainly time enough for somebody who had a murder weapon to get rid of it, as well as cash money, and certainly enough time to use up the cocaine. And along the money lines, if you don't believe that thousands of dollars can be snorted or put in your vein in one week, then you don't know what it's like in the cocaine world. That money would have gone like that, as well as with the cocaine (indicating)." (R. 777.)
This argument certainly did not prejudice the appellant. Prosecutors are given "wide latitude in their exhortations to the jury." Armstrong v. State, 516 So.2d 806, 809
(Ala.Crim.App. 1986). Even if these statements constituted error, they certainly do not rise to the level of plain error. See Kuenzel.
The appellant also contends that during her closing argument, the prosecutor vouched for the credibility of eyewitness Terry Dill. We have carefully reviewed the record and find that although the prosecutor's remarks were inappropriate because they were based on facts not in evidence and could arguably be interpreted as vouching for the credibility of the witness, the remarks did not constitute reversible error. The thrust of the prosecutor's argument was that Terry Dill had already admitted to being a drug dealer so he had no reason to lie about what happened. This argument was made in response to the appellant's strenuous attack on Terry Dill's credibility.
In reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, our task is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts and/or comments in the abstract. Whitlow v. State, 509 So.2d 252 (Ala.Crim.App. 1987); Wysinger v. State, 448 So.2d 435 (Ala.Crim.App. 1983);Carpenter v. State, 404 So.2d 89 (Ala.Crim.App. 1980), cert.quashed, 404 So.2d 100 (Ala. 1981).
In light of the brevity and isolated nature of the remarks and the thorough instructions of the trial court which charged the jury that they were the exclusive judges of the evidence in the case and the sole judges of the credibility of the witnesses, we find that the remarks, although inappropriate, *Page 359 
do not constitute reversible error. The statements did not so infect the trial with unfairness "as to make the resulting conviction a denial of due process." Darden v. Wainwright,477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (citation omitted).
 C
The appellant contends that the prosecutor made several misleading comments to the jury during the voir dire and in her opening statement during the penalty stage concerning aggravating and mitigating circumstances and the imposition of the death penalty. He also contends that she mislead the jurors during the voir dire as to what constituted reasonable doubt and as to the law on a juror's eligibility to serve on the jury based on his or her views of the death penalty. The appellant failed to object to any of alleged erroneous statements. We find it unnecessary to set out these contentions individually because, after a careful review of the record, we find that they have no merit. Even if error had occurred, it certainly did not rise to the level required for plain error. SeeKuenzel. We also note that the jury was thoroughly instructed on the concepts of reasonable doubt and on aggravating and mitigating circumstances.
 VII
The appellant contends that there was insufficient evidence of causation to sustain the verdict and that the trial court erred in failing to instruct the jury on the element of causation. These arguments will be addressed separately below.
 A
The appellant contends that there is insufficient evidence to sustain the verdict because Leon Shaw's death was caused by his pulling out his feeding tube and dehydration rather than by the gunshot wound. We disagree. The record reveals that two physicians testified that the victim died as a result of complications from a gunshot wound. There was testimony that the victim was admitted to the hospital with an injury that was "generally not survivable." (R. 805.)
"A person is criminally liable if the result would not have occurred but for his conduct, operating alone or concurrently, with another cause, unless the concurrent cause was sufficient to produce the result and the conduct of the actor clearly insufficient." Ala. Code 1975 § 13A-2-5(a).
 "Where, as here, the wound inflicted by defendant upon the victim is dangerous to life, the fact that there are other contributing causes of death does not prevent such a wound from being the legal cause of death. It does not have to be the sole cause. This is true whether (1) the other cause precedes, (2) the other cause is synchronous with, or (3) the other cause follows, commission of the felonious act charged." (citations omitted.)
Smith v. State, 354 So.2d 1167, 1170 (Ala.Crim.App. 1977),cert. denied, 354 So.2d 1172 (Ala. 1978). We see no reasonable basis for a conclusion that the death was not caused by the gunshot wound. The evidence clearly supports the verdict.
 B
The appellant contends that the trial court erred in failing to charge the jury on the specific element of causation. The appellant did not object to the court's oral charge, did not orally request such a charge, and did not submit a written requested charge on this issue. Thus, it is impossible for this court to determine what specific charge the appellant would have had the court give to the jury. In any event, we find that the court's failure to give a charge on causation did not constitute reversible error. The trial court properly charged the jurors that they must find that the defendant's conduct caused the death of another person. He also instructed the jury that all elements of the offense must be proved beyond a reasonable doubt. In light of § 13A-2-5(a)'s "but for" test, it is more likely that a complete instruction on causation would actually have been favorable to the prosecution. See Hendersonv. Kibbe, 431 U.S. 145, 156 n. 16, *Page 360 97 S.Ct. 1730, 1738 n. 16, 52 L.Ed.2d 208 (1977). Furthermore, the appellant's defense was based on the assertion that someone other than the appellant murdered Leon Shaw. If the jury believed the appellant's version of the incident they would have acquitted him because they would have believed that the appellant did not shoot Leon Shaw. Thus, the trial court did not err on failing to instruct the jury on the specific element of causation.
 VIII
The appellant contends that the trial court erred in failing to instruct the jury on the lesser included offenses of first degree assault and first degree attempted murder. The appellant bases this argument on the fact that Shaw did not die until 9 months after he was shot. He contends that a jury could have found that Shaw may have died from "the inaction or inattention to the victim's medical problems by the victim's family or from the victim's own conscious or unconscious desire to die." (Appellant's brief at 66-67.) The appellant did not object to the trial court's failure to instruct on these offenses. While this failure does not preclude our review in capital cases, it does weigh against any claim of prejudice. Bui v. State,551 So.2d 1094 (Ala.Crim.App. 1988), aff'd, 551 So.2d 1125 (Ala. 1989), vacated on other grounds, ___ U.S. ___, 111 S.Ct. 1613,113 L.Ed.2d 712 (1991).
The jury should be charged on a lesser included offense when there is a reasonable theory from the evidence to support such a position. Ex parte Julius, 455 So.2d 984 (Ala. 1984), cert.denied, 469 U.S. 1132, 105 S.Ct. 817, 83 L.Ed.2d 809 (1985). "A trial judge may refuse to charge on a lesser included offense when it is clear to the judicial mind that there is no evidence to support the jury's being charged on the lesser included offense." Gurganus v. State, 520 So.2d 170, 174
(Ala.Crim.App. 1987). When the accused denies committing the offense charged, he is not entitled to instructions on a lesser included offense. Daly v. State, 442 So.2d 143 (Ala.Crim.App. 1983).
There was absolutely no factual basis to support a conviction for assault or attempted murder. There was no evidence presented from which the jury could have reasonably inferred that the appellant shot Shaw but that something else caused his death. The only reasonable conclusion from the evidence was that the appellant murdered Shaw or that someone else murdered Shaw.
 IX
The appellant next contends that he is entitled to relief because of various errors that occurred during the penalty phase of his trial. These claims will be addressed separately below.
 A
The appellant first contends that the trial court failed to adequately inform the jurors that there was no requirement that mitigating circumstances be unanimously found. He relies onMills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860,100 L.Ed.2d 384 (1988). We note initially that the appellant failed to object to the trial court's instructions on these grounds. While that does not preclude our review of this claim, it does weigh against any claim of prejudice. Bui.
The appellant's argument was previously rejected by this court in Kuenzel, supra, wherein we stated:
 "We have examined the complained of portion of the trial judge's charge on mitigating circumstances and find that it is in accordance with the pattern jury instruction and in accordance with § 13A-5-45(g). Therefore, we find no plain error. . . . The basis of the defendant's argument lies in the fact that the trial judge 'used the collective "you" throughout its instructions.' The defendant contends that '[i]t would be perfectly reasonable for a juror to conclude . . . that "you" means all of you, unanimously, when determining whether a mitigating circumstance existed.' . . .
 "We reject this contention as did the Alabama Supreme Court in Ex parte Martin, 548 So.2d 496, 499 (Ala.), cert. *Page 361 
denied, 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989):
 " 'The charge to the jury in the instant case was in accordance with the pattern jury instruction and in accordance with Ala. Code 1975 § 13A-5-45(g). The jury was told that the defendant had the burden of injecting an issue of mitigating circumstances, but that once it was injected the state had the burden of disproving the factual existence of any mitigating circumstances by a preponderance of the evidence. There was no jury charge or verdict form to indicate that at least 10 jurors must agree on the existence of a mitigating circumstance.
 " 'We have considered the trial court's charge to the jury in light of the holding in Mills and are of the opinion that the jurors could not have reasonably believed that they were required to agree unanimously on the existence of any mitigating factor.' "
Kuenzel. Based on the above, we find no error in the trial court's instructions.
 B
The appellant also contends that the trial court erred because it did not properly instruct the jury as to unanimity regarding aggravating circumstances. The appellant did not object to any penalty stage jury instructions concerning the burden of proof.
The trial court's instructions substantially followed the pattern jury instructions recommended by the Alabama Supreme Court. This Court will not hold that the trial court plainly erred when the jury was instructed pursuant to those pattern instructions. See Ex parte Martin; 548 So.2d 496 (Ala.), cert.denied, 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989); Exparte Harrell, 470 So.2d 1309, 1312 (Ala.), cert. denied,474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985); Kuenzel.
Furthermore, the instruction was a correct statement of the law which correctly informed the jury that unanimity was required to find the existence of an aggravating circumstance.
 C
The appellant next contends that the trial court violated the principles of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954,57 L.Ed.2d 973 (1978), by instructing the jury as follows:
 "A mitigating circumstance does not have to be included in the list that I have read to you in order for it to be considered by you. In addition to the mitigating circumstances previously specified, mitigating circumstances shall include any aspect of the defendant's character or record in any of the circumstances of the offense that the defendant offers as a basis for a sentence of life imprisonment without parole instead of death. A mitigating circumstance considered by you should be based on the evidence you have heard." (R. 872-73.) (emphasis added.)
With the exception of the word "in" emphasized in the quoted charge, which is the portion of the charge to which the appellant objects, the charge is identical to that provided in Alabama Pattern Jury Instructions. The pattern jury instruction provides in relevant part: "shall include any aspect of the defendant's character or record and any of the circumstances of the offense." "Proposed Pattern Jury Instructions for use inSentence Phase of Capital Cases Tried Under Act No. 81-178
(Alabama Bar Institute for Continuing Legal Education 1982)." For several reasons, it appears that this discrepancy is most probably a typographical error. The appellant made no objection to the charge. Furthermore, the other portion of the charge was identical to the pattern jury charge. If such is the case, the charge was taken directly from Lockett. Because we cannot base our ruling on speculation, however, we also find that the appellant is not entitled to relief even if the judge spoke the word "in" rather than "and" if the charge was given as it appears.
Under the charge as it appears above, the jury could have reasonably concluded that they could consider any aspect of the appellant's character even though the jury *Page 362 
may have believed it could only consider his record as it applied to the circumstances of the offense. Furthermore, even if error occurred, any error was harmless. See Ex parteWhisenhant, 482 So.2d 1241 (Ala. 1983) (harmless error rule applies in capital cases at the sentencing hearing). Both the prosecutor and the appellant's attorney informed the jury that it could consider anything in mitigation. Furthermore, the aggravating circumstances clearly and abundantly outweighed what the appellant alleges to be the mitigating circumstances.See Baldwin v. State, 456 So.2d 117 (Ala.Crim.App. 1983),aff'd, 456 So.2d 129 (Ala. 1984), aff'd, 472 U.S. 372,105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). See also Tafero v. Dugger,873 F.2d 249 (11th Cir. 1989), cert. denied, 494 U.S. 1090,110 S.Ct. 1834, 108 L.Ed.2d 962 (1990) (harmless error not to charge jury on nonstatutory mitigating circumstances when there was no reasonable probability that jury would have reached a different result had they been given such an instruction);White v. Dugger, 523 So.2d 140 (Fla. 1988); Ford v. State,522 So.2d 345 (Fla. 1988).
 D
The appellant argues in a one-sentence footnote that the trial court's instruction to the jury regarding the State's burden of disproving mitigating circumstances by a preponderance of the evidence violated his constitutional rights. This claim has no merit. We also note that the appellant failed to object to this instruction at trial. Ala. Code 1975, § 13A-5-45(g), provides that the defendant has the burden of injecting mitigating circumstances and when this occurs, the State has the burden of disproving the factual existence of those mitigating circumstances by a preponderance of the evidence. Aggravating circumstances must be proved beyond a reasonable doubt. Ala. Code 1975, § 13A-5-45(e).
In Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047,111 L.Ed.2d 511 (1990), the Supreme Court held that defendants may be required to prove mitigating circumstances by a preponderance of the evidence as long as the State's method of allocating the burdens of proof did not lessen the State's burden of proving every element of the offense charged, or in that case, the existence of aggravating circumstances. In Alabama, the defendant only has to "inject" the existence of mitigating circumstances and the State must disprove their existence by a preponderance of the evidence. This in no way lessens the State's burden of proving the elements of its case or the existence of aggravating circumstances. In fact, the State still has a greater burden in disproving the existence of mitigating circumstances than the defendant has in introducing mitigating circumstances. The defendant need only "inject" the issue. We do not find Alabama's method of allocating the burdens of proof unconstitutional. Furthermore, the State did not attempt to disprove any of the appellant's alleged mitigating circumstances. Thus, the jury did not even have to consider the State's burden of disproving the existence of mitigating circumstances.
 E
The appellant contends that the trial court erred in failing to adequately instruct the jury as to the mitigating circumstance that "[t]he victim was a participant in the defendant's conduct or consented to it." Ala. Code 1975, §13A-5-51(3). The appellant did not object to the lack of a more specific instruction. Thus, any error in the instruction must rise to the level of plain error. The instruction was identical to Alabama's "Proposed Pattern Jury Instructions for use in theSentence Phase of Capital Cases Tried Under Act No. 81-178" and thus, did not constitute plain error. Kuenzel. Furthermore, the appellant has failed to specify how the court could have further instructed the jury as to this mitigating circumstance.
 F
The appellant also contends that the trial court erred to reversal in failing to give the jury preliminary instructions at the penalty phase of the trial and prior to voir dire and jury selection. He argues that failure to give such instructions prior *Page 363 
to voir dire resulted in the jurors' failure to truthfully answer questions concerning the imposition of the death penalty. The appellant failed to object to either of these alleged erroneous omissions. These claims have no merit. There is no requirement that the trial court give the jury such preliminary instructions. The jury was thoroughly and properly instructed during the penalty phase of the trial. The jurors were thoroughly questioned about their feelings concerning the death penalty and surely could honestly answer such questions without preliminary instructions. We cannot see how the appellant was harmed by the absence of such preliminary instructions. Even if error occurred, it certainly does not rise to the level required for a finding of plain error.See Ex parte Womack, 435 So.2d 766, 769 (Ala.), cert. denied,464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983).
 G
The appellant next contends that the trial court erred in not asking jurors whether they had fixed opinions in favor of the death penalty. The appellant did not question the jurors as to whether they had fixed opinions in favor of the death penalty even though he had ample opportunity to do so during the voir dire. Furthermore, he never requested that the trial court question the jury on this matter. This Court recently rejected the same argument in Henderson v. State, 583 So.2d 276
(Ala.Crim.App. 1990). In light of Henderson, we find that the court did not err in failing to life-qualify the jury.
 H
The appellant contends that prosecutorial misconduct rendered a death sentence constitutionally impossible. Most of the claims the appellant raises in this section have been previously addressed in this opinion.
The appellant argues that prosecutorial misconduct occurred when the prosecutor relied on three aggravating circumstances after initially indicating that she would rely on only two aggravating circumstances. The appellant did not object to this alleged act of misconduct. The record reveals that, prior to the penalty portion of the trial and outside the presence of the jury, the prosecutor indicated that she would be relying on § 13A-5-49(1) (capital offense committed by a person under a sentence of imprisonment) and § 13A-5-49(4) (capital offense committed while defendant was engaged in the commission of a robbery). During the course of the penalty phase hearing, however, the prosecutor introduced a certified copy of the appellant's prior convictions for second degree robbery and for second degree theft. See Ala. Code 1975, 13A-5-49(2) (defendant was previously convicted of another capital offense or felony involving the use or threat of violence to the person). The appellant's attorney did not object to the admission of the appellant's certified prior convictions, including the second degree robbery. In fact, when specifically asked about the convictions, he stated that he had no objection. There is absolutely no evidence that the appellant's attorney was unaware of the prior convictions prior to the hearing. The record does not indicate that any prosecutorial misconduct occurred. Furthermore, even if it had, the alleged error certainly did not rise to plain error requiring relief for the appellant. See Kuenzel.
The appellant next contends that prosecutorial misconduct requiring reversal of the death sentence occurred when the prosecutor elicited the details concerning his prior second degree robbery conviction. He alleges that the prosecutor improperly introduced a nonstatutory aggravating circumstance into evidence and that such evidence was based on inadmissible hearsay. The record reveals that the prosecutor admitted certified copies of a conviction for second degree robbery and for first degree theft. The appellant's parole officer then testified that the appellant was under a sentence of imprisonment at the time of the offense in question. On cross-examination, the appellant asked the parole officer about the details of the second degree robbery conviction. The parole officer testified concerning the violence surrounding that conviction. *Page 364 
The appellant asked for information in a probation report regarding the offense. On redirect examination, the prosecutor elicited further details about the offense which the appellant did not bring out during cross-examination.
"Any evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements." Ala. Code 1975, § 13A-5-45(d).See also Stephens v. State, 580 So.2d 11 (Ala.Crim.App. 1990). Thus, the appellant's hearsay claim has no merit. Furthermore, the testimony concerning the violence surrounding the robbery conviction was properly admitted to show the violent nature of the offense under Ala. Code 1975, §13A-5-45(c). Siebert v. State, 562 So.2d 586 (Ala.Crim.App. 1989), aff'd, 562 So.2d 600 (Ala.), cert. denied, ___ U.S. ___,111 S.Ct. 398, 112 L.Ed.2d 408 (1990).
 I
The appellant next contends that the trial court erred in failing to find the existence of any mitigating circumstances. The appellant specifically argues that the failure to find the following statutory and nonstatutory mitigating circumstances requires the reversal of his death sentence: (1) the fact that the appellant refused to plead guilty and receive a sentence of life imprisonment indicated that the appellant had mental health problems; (2) the fact that Leon Shaw was a participant in the appellant's conduct; and (3) the fact that the appellant was a drug addict and was in a state of extreme mental or emotional disturbance at the time of the murder and did not have the capacity to understand the criminality of his conduct.
The record reveals that the trial court found no statutory or nonstatutory mitigating circumstances. This finding is fully supported by the evidence in this cause. See Brownlee v. State,545 So.2d 151 (Ala.Crim.App. 1988), aff'd, 545 So.2d 166
(Ala.), cert. denied, 493 U.S. 874, 110 S.Ct. 208,107 L.Ed.2d 161 (1989); Thomas v. State, 539 So.2d 375 (Ala.Crim.App.),aff'd, 539 So.2d 399 (Ala. 1988); Tarver v. State,500 So.2d 1232 (Ala.Crim.App.), aff'd, 500 So.2d 1256 (Ala. 1986),cert. denied, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685
(1987).
 J
The appellant argues that the trial court erred in its sentencing order in which it stated that "the court holds that the aggravating circumstances outweigh the mitigating circumstances and compel the court to affix punishment at death." The appellant claims that this statement indicates that the trial court misunderstood the law as it applies to the death sentence and believed that the death sentence was mandatory. This argument has no merit. It is clear from the record, including all of the jury instructions and the sentencing order, that the trial court clearly understood the law and did not believe that a death sentence was mandatory. Furthermore, we do not agree with the appellant's reading of the sentencing order.
 X
The appellant argues that the trial court erred in failing to find that Leon Shaw was "a participant in the defendant's conduct or participated in it." Ala. Code 1975, § 13A-5-51(3). The appellant's argument that Leon Shaw's refusal to give him cocaine made Shaw a participant in the appellant's conduct has no merit and is not a reasonable interpretation of the statute. Section 13A-5-51(3) contemplates a situation wherein the victim participated in the capital crime with the defendant. Furthermore, the appellant seems to argue that because Leon Shaw was a drug dealer, the appellant should not have received the death penalty. This argument likewise has no merit. The relative worth of the victim is not a consideration in determining whether to impose the death penalty. See Booth v.Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). *Page 365 
 XI
The appellant next contends that the trial court erred in two instances by limiting his cross-examination of Junatha Shaw. These arguments will be addressed separately below.
 A
The appellant contends that the trial court erred in failing to allow him to cross-examine Junatha Shaw about the underlying offenses for which she had been on probation and a new charge which precipitated a probation revocation hearing. The record reveals that Junatha Shaw had two convictions for cocaine possession and one conviction for shooting into an occupied dwelling. She also had a pending theft charge against her and was facing revocation of her probation as a result of that charge. The record reveals that prior to Junatha Shaw's taking the stand, the trial court ruled that the appellant could inquire into the witness's pending revocation hearing in order to show bias but prohibited the appellant from inquiring into the underlying details of the offenses.
We need not address the merits of this issue because the record reveals that Junatha Shaw's prior convictions, the pending theft charge, and the possible probation revocation were brought out during the State's direct examination of the witness. The prosecutor also questioned Shaw as to any agreements made with her in exchange for her testimony. The appellant also questioned the witness on cross-examination concerning the cocaine possession convictions. The appellant could have further examined the witness regarding bias or any agreements made with the State concerning the pending charge but apparently chose not to do so. Thus, even if the trial court's initial ruling prohibiting the appellant from going into the underlying offenses constituted error, any error was harmless in light of the fact that all of the underlying offenses were presented to the jury. Furthermore, the appellant was never prohibited from questioning the witness about any bias she may have had or any agreements she may have made with the State in exchange for her testimony. The appellant was in no way harmed or prejudiced by the trial court's ruling.
 B
The appellant next contends that the trial court erred in not allowing him to question Junatha Shaw about a "drug raid" that occurred at her house after the victim, Leon Shaw, has returned home from the hospital. This argument has no merit. It is not permissible to prove a witness's good or bad character or to fortify or impeach a witness's testimony by proving particular acts. Carroll v. State, 555 So.2d 805 (Ala.Crim.App. 1989). The record reveals that the appellant was attempting to impugn the witness's character by the introduction of an unrelated and immaterial specific bad act. Furthermore, it is unclear from the appellant's question whether the witness was the object of the search, whether a search warrant was even executed, whether the witness had any guilty involvement in the act forming the basis of the reason for the search or, if there was a search, whether anything was found. We note that after the court sustained the State's objection, the appellant did not make an offer of proof. See Freeman v. State, 453 So.2d 776
(Ala.Crim.App. 1984). The trial court did not err in refusing to allow the appellant to cross-examine the witness about an alleged, unrelated drug raid.
 XII
The appellant next contends that the trial court erred in allowing Dr. Keith Langford to testify as to the victim's cause of death because his testimony was based partly on a hospital discharge summary which was prepared by another physician who did not testify. The record reveals that the hospital records were in evidence at the time of Dr. Langford's testimony. This issue was recently addressed by the Alabama Supreme Court, which stated that "a medical expert may give opinion testimony based in part on the opinions of others when those other opinions have been admitted into evidence." Ex parte Bailey,590 So.2d 354, (Ala. 1991). See also Ex *Page 366 parte Wesley, 575 So.2d 127 (Ala. 1990); Nash v. Cosby,574 So.2d 700 (Ala. 1990). Thus, Dr. Langford's testimony concerning the cause of death was properly admitted.
 XIII
The appellant next contends that the trial court erred in allowing Dr. Robert Brissie, the coroner who performed the autopsy on the victim, to testify as to the ultimate fact in issue in the case. He specifically points to Dr. Brissie's statement that "the manner of death was best described as homicide." (R. 330.) We note that the appellant failed to object to this testimony at the trial. Although this failure to object does not preclude our review in a capital case, it does weigh against any claim of prejudice. See Bui.
Although a witness may not give an opinion on an ultimate fact in issue, Brissie's testimony does not constitute reversible error under the circumstances of this case. Dr. Brissie had already testified that the cause of death was complications from a gunshot wound to the head. His use of the word "homicide" did not change the nature of his testimony that the victim's death was the result of a gunshot wound. Furthermore, there was no dispute at trial that someone shot Leon Shaw. The appellant's theory of the case was that someone else shot Leon Shaw. Even if the appellant had properly objected, any error in Dr. Brissie's testimony did not affect the substantial rights of the appellant. See Page v. State,487 So.2d 999 (Ala.Crim.App. 1986). Furthermore, any error in the testimony was not so egregious that it "seriously affect[ed] the fairness, integrity or public reputation of the judicial proceedings." United States v. Young, 470 U.S. 1, 15,105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (citation omitted).
 XIV
The appellant contends that the trial court erred in allowing the State to refer to the victim's surviving children during the guilt stage closing argument in violation of Booth v.Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). The appellant argues that the following portion of the closing argument constitutes reversible error:
 "So why are we here? Who does care about Leon Shaw? Who cares that this man was assassinated just four blocks from the courthouse? Who cares that he's lying in his grave today?
 "Well, you would think that these people do (indicating). He did leave two children, who have to grow up with the fact that their father was murdered because of cocaine. That he was a dealer, that he was a criminal. You would think these people would care." (R. 665-66.)
The appellant failed to object to this portion of the closing argument.
Although we do not approve of the prosecutor's comments, they certainly do not rise to the level of those condemned inBooth. See Kuenzel. Rather than asking for sympathy, the prosecutor was in fact personalizing the victim in a negative light. She was certainly not implying that the jury should have sympathy for the victim. Furthermore, although the comments personalized the victim, they were brief enough that we cannot conclude that they prejudiced the appellant. See Kuenzel.
prosecutor's remarks were markedly different in scope and tone from those condemned in Booth and did not present the emotionally charged appeal that was presented in Booth. While we do not approve of the prosecutor's comments, they do not constitute reversible error. See, eg., Bertolotti v. Dugger,883 F.2d 1503 (11th Cir, 1989), cert. denied, ___ U.S. ___,110 S.Ct. 3296, 111 L.Ed.2d 804 (1990); Gilmore v. Armontrout,861 F.2d 1061 (8th Cir. 1988), cert. denied, 490 U.S. 1114,109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989); People v. Miranda,44 Cal.3d 57, 241 Cal.Rptr. 594, 629, 744 P.2d 1127, 1161 (1987),cert. denied, 486 U.S. 1038, 108 S.Ct. 2026, 100 L.Ed.2d 613
(1988) (prosecutor's comments regarding effect of murder on victim's family held harmless beyond a reasonable doubt);People v. Ghent, 43 Cal.3d 739, 239 Cal.Rptr. 82,739 P.2d 1250 (1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1099, *Page 367 99 L.Ed.2d 261 (1988) (same). They certainly do not rise to the level of plain error.
 XV
The appellant next contends that his death sentence constitutes cruel and unusual punishment.[2] The main thrust of the appellant's argument is that his sentence constitutes cruel and unusual punishment because he rejected a settlement offer of life imprisonment. He argues that he was given the death penalty because he requested a jury trial. He also contends that he did not understand the terms of the settlement offer when it was made. This argument has no merit.
The appellant's attorney stated to the trial court that the appellant understood the terms of the offer. The appellant stated to the court that he understood the difference between the life sentence he would receive pursuant to the offer and a capital murder sentence. There is no evidence that the death penalty was imposed because the appellant requested a jury trial. In essence, the appellant is arguing that every time a defendant receives a sentence which is greater than the sentence offered as a settlement, the sentence would constitute cruel and unusual punishment. We certainly cannot accept such a hard and fast rule. Each case must be decided on its own facts. The record in this case supports the imposition of the death penalty. (See Part XXIII of this opinion.)
 XVI
The appellant next contends that the trial court erred in allowing Terry Dill to testify as to hearsay statements made by his mother, Abby Dill. Specifically, the appellant objects to the admission of Abby Dill's hearsay statement that in the late afternoon on the day of the murder, the appellant telephoned her and told her four different stories. The appellant contends that the reference to "four different stories" was prejudicial to him because it gave the jury the impression that he was lying. Although the appellant failed to object to this testimony at trial, he contends that the statement constitutes plain error and thus, requires his conviction to be reversed. We disagree.
Even if an objection had been made, the admission of the hearsay testimony would have been harmless error because it did not affect the substantial rights of the appellant. See Page v.State, 487 So.2d 999 (Ala.Crim.App. 1986). Abby Dill herself testified during the trial to many statements made to her by the appellant. She testified that the appellant called her a number of times between 5:00 p.m. and 6:00 p.m. on the day of the murder. She further testified that immediately before the appellant was arrested he told her to get some money and send him and Terry Dill out of town. She further testified that on the Friday before the trial the appellant called and told her that Terry Dill should not say anything and "take some years." (R. 447.) Abby Dill's own testimony on direct and cross-examination certainly gave rise to a stronger inference that the appellant was lying than did the hearsay statement admitted through Terry Dill. In light of the entire record, any error in the admission of the testimony was harmless. Furthermore, the admission of Terry Dill's testimony certainly did not rise to the level required for plain error. SeeKuenzel.
 XVII
The appellant next contends that the trial court erred to reversal in referring to the appellant's possible punishment during the trial court's guilt phase instructions. The court instructed the jury as follows:
 "Ladies and gentlemen, of course, it's my duty at this time to give you those principles of law which you have to apply to the facts in this case as you find those facts. And let me stop there and say this, that the defendant in this case is charged with having committed a capital murder, capital offense. Of course, a capital offense is an offense for which the punishment is either life imprisonment *Page 368 
without parole or death. The law provides that if a defendant is convicted of a capital offense, additional proceedings will be held to determine whether his punishment is to be life without parole or death. But at this time, you are not to concern yourselves with any issue of punishment. Instead the only determination you are to make at this time is whether the State has proven beyond a reasonable doubt and to a moral certainty that the defendant is guilty of the capital offense or any lesser included offense, which I'll explain later. And that's your only consideration at this time."
(R. 789-790.) The charge is substantially the same as the charge suggested in the seventh of the "General Considerations" of the "Proposed Pattern Jury Instructions for use in the GuiltStage of Capital Cases Tried Under Act No. 81-178 (Alabama Bar Institute for Continuing Legal Education 1982)." Immediately before the proposed charge, the pattern jury instructions state, "The trial judge should consider giving the following instruction or one similar to it, either at the beginning of the guilt stage trial or at some place during the oral chargeto the jury at the end of the guilt stage or both." Id. The charge in no way diverts the jury's attention from the main issue of guilt. See Crowe v. State, 435 So.2d 1371
(Ala.Crim.App. 1983). We find no error in the court's charge.
 XVIII and XIX
The appellant next contends that the trial court erred in admitting his statement because he was a drug addict and could not have knowingly waived his Miranda rights. He also contends that the statement was inadmissible because the police intentionally failed to tape the statement. The appellant did not object to the admissibility of the statement at trial.
The record reveals that the appellant signed a waiver of rights form. Sergeant Duncan testified that he read the appellant his Miranda rights and had the appellant read along with him. He testified that the appellant stated that he understood his rights and wanted to talk about what happened. Duncan further testified that he had been around people who were under the influence of drugs and/or alcohol. He testified that at the time the statement was taken the appellant did not appear to be under the influence of drugs or alcohol. Duncan testified that the appellant was lucid. He further testified that the appellant was not threatened in any way or promised a reward. He further testified that he did not suggest using a tape recorder at that point, but that he took notes as the appellant was talking.
The finding of the trial court as to voluntariness will not be disturbed unless it appears contrary to the great weight of the evidence or is manifestly wrong. Lewis v. State,535 So.2d 228 (Ala.Crim.App. 1988); Magwood v. State, 494 So.2d 124
(Ala.Crim.App. 1985), aff'd, 494 So.2d 154 (Ala.), cert.denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). "The fundamental requirements for voluntariness are that the court must conclude, in order to find a defendant's confession voluntary, that he made an independent and informed choice of his own free will, that he possessed the capability to do so, and that his will was not overborne by pressures and circumstances swirling around him." Lewis, at 235. See alsoMagwood. We find that the trial court did not err in admitting the statement. There was sufficient evidence that the appellant was capable of understanding his rights and indeed, that he understood his Miranda rights. We also note that the appellant presented absolutely no evidence that he was under the influence of drugs or alcohol at the time he gave the statement.
The trial court likewise did not err in admitting the statement even though it was not tape recorded. There is no right or requirement that a statement be tape recorded. The fact that the statement was not taped went to its weight, not its admissibility. See Hammins v. State, 489 So.2d 809
(Ala.Crim.App. 1983); Alexander v. State, 870 So.2d 330
(Ala.Crim.App.), cert. denied, 370 So.2d 332 (Ala. 1979). The appellant *Page 369 
was free to test Sergeant Duncan's memory during cross-examination.
 XX
The appellant next contends that the introduction of his presentence report and the trial court's consideration of the report denied him a fair sentencing hearing. The appellant bases his allegation on several grounds of error which will be addressed separately below. We note that the appellant did not object to the presentence report.
 A
The appellant contends that he did not receive the presentence report in a timely manner and as a result, that he did not have an adequate opportunity to review the report and to rebut the hearsay statements therein. We note that this court has held numerous times that presentence reports are admissible and may be considered by the trial court as long as the information contained herein is relevant to the sentencing and the defendant has the opportunity to rebut the information.See, e.g., Kuenzel; Thompson v. State, 503 So.2d 871
(Ala.Crim.App. 1986), aff'd, 503 So.2d 887 (Ala.), cert. denied,484 U.S. 872, 108 S.Ct. 204, 98 L.Ed.2d 155 (1987).
Although the record reveals that the appellant had a copy of the presentence report prior to the sentencing hearing, there is no evidence in the record to indicate when he received that report. The appellant specifically stated that he had no objection to the admission of the presentence report. He did not indicate that he had not had time to review the report nor did he ask for a continuance. This evidence indicates that the appellant received the report in a timely manner. We can find no evidence in the record that the appellant received the report in an untimely manner or was prejudiced in any way.See, e.g., Henderson v. State, 583 So.2d 276 (Ala.Crim.App. 1990); Thompson.
 B
The appellant contends that the presentence report contained hearsay statements indicating that he had been involved in criminal activity for which he was not convicted. He further claims that he did not have the opportunity to rebut these statements and that the inclusion of that information in the report prejudiced him. This argument has no merit.
The information contained in the report to which the appellant objects concerns the vehicle in which Leon Shaw was found and appears as follows: "The tag on the vehicle was registered to Aaron Brown, and the VIN [vehicle identification number] of the vehicle was registered to Alabama Farm Bureau on a salvaged vehicle." (Supp.R. 9.) The appellant contends that this information indicates that the appellant was in a stolen vehicle and thus prejudiced him. We disagree. As we read the report, this information simply referred to the car in which Shaw was found. It certainly does not imply that the appellant was involved in stealing a car. Furthermore, the evidence at trial led to the inference that the car in which Shaw was found belonged to Leon Shaw. Leon Shaw was driving the car when he picked up Terry Dill. There is no mention anywhere in the record that the appellant had been involved in a car theft. Furthermore, there is nothing in the record to indicate that the trial court considered this information from presentence report in sentencing the appellant. This information was not mentioned at the sentencing hearing or in the sentencing order. Furthermore, the appellant had the opportunity to, but did not, rebut the information. Even if the statement was interpreted as a reference to a crime for which the appellant was not convicted, such information would not have made the reportper se prejudicial in light of the fact that the trial court in no way considered the information in imposing sentence. See,e.g., Johnson v. State, 521 So.2d 1006 (Ala.Crim.App. 1986),aff'd, 521 So.2d 1018 (Ala.), cert. denied, 488 U.S. 876,109 S.Ct. 193, 102 L.Ed.2d 162 (1988).
 C
The appellant next contends that the presentence report was prejudicial because *Page 370 
it contained hearsay information that he told his parole officer that Terry Dill had murdered Leon Shaw. We note that the presentence report was not prepared by the parole officer to whom the appellant made the statement.
We note that although the presentence report is an out-of-court statement and is entirely hearsay, it is admissible under Ala. Code 1975, § 13A-5-47. Thompson. The trial court is only required to provide a fair opportunity for rebuttal.
The appellant has failed to show that he was prejudiced by the statement. The appellant's culpability was established by the jury's verdict of guilty on the basis of which a conviction was entered. See Ex parte Davis, 569 So.2d 738 (Ala. 1990);Thompson. The appellant was sentenced for that conviction. The appellant's sentence was based on the existence of three aggravating circumstances and the fact that there were no mitigating circumstances. Thus, this argument is without merit.
 D
The appellant finally contends that the trial court erred in considering the presentence report because it was based in part on an interview held without counsel present and without first advising him of his Miranda rights. He specifically refers to his statement that Terry Dill was the person who murdered Leon Shaw. That statement was made to the appellant's parole officer. The presentence report indicates that the officer who prepared the report did not personally interview the appellant.
We find that even if error had occurred in the failure to give the appellant his Miranda warnings and to notify his counsel of the interview, any error was harmless because the statements attributed to the appellant were constitutionally insignificant. See Kuenzel. Furthermore, it is clear from the record that the trial court accurately weighed the aggravating and mitigating circumstances based on the evidence presented at the sentencing hearing and the trial and not on anything contained in the presentence report. "We find beyond a reasonable doubt that the inclusion of these statements did not contribute to or affect the trial judges's imposition of the death penalty." Kuenzel, at 526.
We note that some federal jurisdictions have held thatMiranda warnings are not required prior to a presentence interview when the defendant has already been convicted of a crime. See, e.g., United States v. Cortes, 922 F.2d 123 (2d Cir. 1990); United States v. Rogers, 921 F.2d 975 (10th Cir.),cert. denied, ___ U.S. ___, 111 S.Ct. 113, 112 L.Ed.2d 83
(1990); United States v. Jackson, 886 F.2d 838 (7th Cir. 1989) (the court also held that the Sixth Amendment right to assistance of counsel likewise did not extend to the defendant's presentence interview by his probation officer).See also United States v. Rea, 678 F.2d 382 (2d Cir. 1982) (prisoner released on probation not entitled to Miranda
warnings when speaking with probation officer); United Statesv. MacKenzie, 601 F.2d 221 (5th Cir. 1979), cert.denied, 444 U.S. 1018, 100 S.Ct. 673, 62 L.Ed.2d 649 (1980) (Miranda warnings not required at interview with probation officer regarding revocation of probation).
 XXI
The appellant next contends that the trial court erred in failing to sua sponte order a competency hearing under the authority of Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836,15 L.Ed.2d 815 (1966). The appellant contends that the trial court must have observed or learned of aberrant behavior on the part of the appellant because the court entered an order for a mental examination. The record reveals that this order was set aside approximately a month after it was entered because the appellant's counsel failed to respond. (R. 983-84.) The appellant also contends that his failure to accept the State's settlement offer of life imprisonment indicated that he was incompetent to stand trial.
"It is without dispute that the conviction of an accused person while that person is legally incompetent violates the right to due process, and that State procedures *Page 371 
must be adequate to protect that right." Ex parte LaFlore,445 So.2d 932, 934 (Ala. 1983). "[A] trial court has an independent duty to inquire into an accused's state of mind when there arereasonable grounds to doubt the accused's competency to stand trial." Id. (emphasis supplied.) See also Ponder v. State,472 So.2d 691 (Ala.Crim.App. 1985); Livingston v. State,419 So.2d 270 (Ala.Crim.App. 1982). The trial court is in a far better position than the reviewing court to determine a defendant's competency to stand trial. Stewart v. State,562 So.2d 1365 (Ala.Crim.App. 1989). Our review of the record reveals no evidence whatsoever that would raise a bona fide and reasonable doubt that the appellant was not competent to stand trial. Furthermore, the appellant's assertion that the trial court must have observed aberrant behavior on the part of the appellant is based purely on speculation. A reviewing court cannot predicate error on matters not shown by the record.Robinson v. State, 444 So.2d 884 (Ala. 1983). We find no error in the trial court's failure to order and conduct a competency hearing. See, e.g., Soriano v. State, 527 So.2d 1367
(Ala.Crim.App. 1988); Robinson v. State, 428 So.2d 167
(Ala.Crim.App. 1982).
 XXII
The appellant finally contends that the trial court erred in not appointing an expert psychiatrist and a private investigator pursuant to Ake v. Oklahoma, 470 U.S. 68,105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). This argument has no merit.
The record reveals that the appellant did not request the assistance of a psychiatrist, nor did he plead insanity. Our review of the record leads us to conclude that the appellant "made no showing of a particularized need or that such assistance was necessary for an adequate defense" as required under Ake. Nelson v. State, 511 So.2d 225, 237 (Ala.Crim.App. 1986), aff'd, 511 So.2d 248 (Ala. 1987), cert. denied,486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). Thus, the trial court did not err in failing to appoint a psychiatrist. See,e.g., Stewart v. State, 562 So.2d 1865 (Ala.Crim.App. 1989).
The record reflects that while his motion for a new trial was pending, the appellant filed a pro se motion for funds that would permit the hiring of a private investigator. Even if the principles of Ake apply to anything other than psychiatrists and the insanity defense, we find no error in the court's failure to appoint a private investigator. See, e.g., Nelson;Duren v. State, 507 So.2d 111 (Ala.Crim.App. 1986), aff'd,507 So.2d 121 (Ala.), cert. denied, 484 U.S. 905,108 S.Ct. 249, 98 L.Ed.2d 206 (1987); Hold v. State, 485 So.2d 801
(Ala.Crim.App. 1986).
 XXIII
As required by Beck v. State, 396 So.2d 645 (Ala. 1980), and Ala. Code 1975, § 13A-5-53, we have reviewed this case for any error involving the appellant's conviction and to determine the propriety of the death sentence.
There is no suggestion in the record that the death penalty was imposed under the influence of passion, prejudice, or any other arbitrary factor. Our review of the sentencing proceedings indicates that the trial court's findings concerning the aggravating and mitigating circumstances are supported by the evidence. The trial court found the existence of three aggravating circumstances: (1) the murder was committed during a robbery in the first degree; (2) the capital offense was committed by a person under sentence of imprisonment; and (3) the appellant had previously been convicted of a felony involving the use or threat of violence. After considering each of the statutory mitigating circumstances set out in Ala. Code 1975, § 13A-5-51 and the possibility of any nonstatutory mitigating circumstances set out in Ala. Code 1975, § 13A-5-52, the trial court found the existence of no mitigating circumstances. These findings were supported by the evidence. See Brownlee v. State, 545 So.2d 151
(Ala.Crim.App. 1988), aff'd, 545 So.2d 166 (Ala.), cert.denied, 493 U.S. 874, 110 S.Ct. 208, 107 L.Ed.2d 161 (1989). *Page 372 
Our independent weighing of the aggravating and mitigating circumstances convinces us of the propriety of the death penalty in this case. Furthermore, we are convinced that the death sentence is neither excessive nor disproportionate to the penalty imposed in similar cases, considering both the crime and the appellant. Two-thirds of Alabama death sentences are for robbery-murder. Kuenzel; Brownlee.
We have searched the entire record for any plain error or defect which might have adversely affected the substantial rights of the appellant and have found none. A.R.App.P. 45A.
The appellant's conviction and his sentence of death are due to be, and hereby are, affirmed.
AFFIRMED.
All the Judges concur.
[1] Although the appellant's charge did not refer to any particular witness, the appellant contends in brief that Junatha Shaw, Terry Dill, and Jacqueline Ball were people of bad character and unworthy of belief.
[2] Many of the reasons given by the appellant to support this contention have been previously addressed in this opinion or are addressed later in this opinion.